Susie J. JACKSON, Plaintiff–Appellant,

v.

RICHARDS MEDICAL COMPANY,
Defendant–Appellee.

No. 91–5473.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 7, 1991.

Decided April 10, 1992.

Dwight E. Duncan (argued & briefed), Memphis, Tenn., for plaintiff-appellant.

Thomas L. Henderson (argued & briefed), Frederick J. Lewis (briefed), Frederick J. Lewis, McKnight, Hudson, Lewis, Henderson & Clark, Memphis, Tenn., for defendant-appellee.

Carolyn L. Wheeler (briefed), E.E.O.C., Washington, D.C., for amicus curiae E.E.O.C.

Before: MERRITT, Chief Judge, GUY, Circuit Judge, and WELLFORD, Senior Circuit Judge.

MERRITT, Chief Judge.

The plaintiff, Susie J. Jackson, appeals the District Court's dismissal of her Title VII, Age Discrimination, and 42 U.S.C. § 1981 claims. We hold that the plaintiff's ADEA and § 1981 claims are time-barred. Further, we hold that as a matter of law the plaintiff fails to state a claim of race discrimination under Title VII.

Though the panel is unanimous as to the ultimate disposition of this case, Judges Guy and Wellford disagree with part IV B of this opinion. Therefore, Judge Guy writes for the court as to the issue discussed in part IV B of this opinion.

I.

Ms. Jackson, an African American, was born in 1939. In 1976 she began work as a "Shop Order Clerk" at Richards Medical Company, the defendant. On January 12, 1984 she received notice that she was subject to a layoff from her position because her job functions were going to be combined with those of the "Engineering Micrographics Clerk." Before effecting the layoff, the defendant administered a written exam to Ms. Jackson to determine whether she met minimum qualifications for the new clerk position. On February 20, 1984, the Engineering Micrographics Clerk position was awarded to Ms. Gwendolyn Richmond, also of African American

descent. Ms. Richmond was less than 40 years of age and had been with Richards Medical Company a shorter period of time than the plaintiff when awarded the job. On February 24, Ms. Jackson was laid off at the age of 44.

The plaintiff, acting without counsel, filed a timely charge with the Equal Employment Opportunity Commission and the Tennessee Human Rights Commission alleging that the defendant discriminated against her on the basis of race. On December 31, 1984, the EEOC found that there was "not reasonable cause" to support the allegation. The Commission issued a Notice of Right to Sue which allowed the plaintiff 90 days within which to file suit against her former employer. After the right to sue notice was issued, the plaintiff told the EEOC that the defendant had "doctored" the scores on her written exam. Before the expiration of the 90 day right to sue period, the EEOC withdrew its no cause determination. After investigating the new allegation, the EEOC, on May 31, 1985, issued a second no cause determination and a second right to sue notice. On August 30, 1985, the plaintiff filed suit in the District Court for the Western District of Tennessee, alleging that the defendant terminated her because of her race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–1 *et seq.* The plaintiff filed her Complaint within 90 days of the issuance of her second right to sue notice.

On August 27, 1985, the plaintiff, still *pro se,* filed a second discrimination charge against the defendant with the EEOC—this time on the basis of age. The plaintiff acquired counsel in November 1985. In February 1986, the plaintiff amended her Complaint to include a cause of action under Section 4(a)(1) of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* In response, the defendant filed a Motion to Dismiss, or in the alternative, a Motion for Summary Judgment. In August 1989, the District Court permitted the plaintiff to further amend her Complaint to include a claim under 42 U.S.C. § 1981, alleging that the defendant failed to pro-

mote, or in the alternative, discharged the plaintiff because of her race.

The District Court dismissed the plaintiff's three claims. The Court held that, under *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), § 1981 did not extend to the plaintiff's failure to promote and discriminatory discharge claims. The Court dismissed the ADEA and Title VII actions as time-barred. With respect to the ADEA claim, it held that the plaintiff failed to file her ADEA charge with the EEOC within 300 days of her discharge. As for the Title VII claim, the District Court stated that the plaintiff's allegation that the defendant doctored her exam scores amounted to an ill-disguised attempt to extend the 90 day limitations period of the first right to sue notice. The Court relied on *Gonzalez v. Firestone Tire & Rubber Co.,* 610 F.2d 241 (5th Cir.1980), for the proposition that the issuance of a new notice by the EEOC could be challenged as an improper attempt to extend the initial notice period. Characterizing as "baseless" the plaintiff's exam allegation, the Court held that the plaintiff could not avoid the limitation period established by the first notice. Because the first 90–day limitation period had expired when the plaintiff filed her District Court Complaint, the Court held the Title VII action time-barred.

The plaintiff appeals the dismissal of her claims. The EEOC requested leave to file a brief as *amicus curiae* supporting the plaintiff's position that the District Court erred in declaring the Title VII action untimely. We granted this request and offered the defendant an opportunity to respond to the EEOC's brief.

## II. Section 1981 Claim

■ The District Court dismissed the plaintiff's § 1981 action on the ground that she failed to state a claim meeting the requirements set forth by the Supreme Court in *Patterson.* Our standard of review of a motion to dismiss under Fed. R.Civ.P. 12(b)(6) is that "to be granted, there must be no set of facts which would entitle the plaintiff to recover. Matters

outside the pleadings are not to be considered, and all well-pleaded facts must be taken as true." *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir.1989) (citations omitted). As it happens, we need not address the holding of *Patterson*, the plaintiff's attempt to bypass *Patterson*, or Congress' overruling of *Patterson*,[1] for we find that the plaintiff's § 1981 action is time-barred.

"Because § 1981 ... does not contain a statute of limitations, federal courts should select the most appropriate or analogous state statute of limitations." *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660, 107 S.Ct. 2617, 2620, 96 L.Ed.2d 572 (1987). This Circuit has held that a state's limitations period for personal injury actions is "the most analogous statute" to § 1981. *Johnson v. Railway Express Agency, Inc.*, 489 F.2d 525, 529 (6th Cir.1973). *Accord Goodman*, 482 U.S. at 661–64, 107 S.Ct. at 2621–22 (rejecting the application of Pennsylvania's 6–year statute of limitations governing claims on contracts and affirming the Second Circuit's application of Pennsylvania's 2–year limitations period governing personal injury actions). Tennessee law provides that civil actions brought under the federal civil rights statutes shall be commenced within one year after the cause of action accrued. TENN. CODE ANN. § 28–3–104 (1985).

Ms. Jackson was discharged in February 1984. She did not bring her § 1981 claim until August 1989. Even if we were to accept the plaintiff's argument that her § 1981 action relates back to the filing of her Title VII Complaint (August 1985) her § 1981 action would be time-barred. Consequently, we affirm the District Court's dismissal of the plaintiff's § 1981 action, albeit for other reasons. *See Foster v. Kassulke*, 898 F.2d 1144, 1146 (6th Cir. 1990).

### III. ADEA Claim

■ The District Court dismissed plaintiff's ADEA action as time-barred. In considering a motion to dismiss for lack of subject matter jurisdiction, the complaint is to be liberally construed and all uncontroverted factual allegations on the face of the complaint are to be taken as true. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

■ The timely filing of a charge of age discrimination with the EEOC is ordinarily a condition precedent to an ADEA lawsuit. The ADEA statute sets out two limitations periods for the filing of a charge: 180 days after the alleged unlawful practice occurred, or 300 days after the alleged unlawful practice occurred. 29 U.S.C. § 626(d). The 300 day period applies where the alleged unlawful practice occurs in a state which has enacted its own laws prohibiting age discrimination in employment, and has authorized a state agency to seek relief for the individual suffering the discrimination. 29 U.S.C. § 633(b). Such a state is commonly known as a "deferral" state. The purpose of the longer limitation period is to give deferral states time to act upon the ADEA complaint, in accordance with Congress' intent that "informal methods of conciliation, conference, and persuasion" be used to eliminate the discriminatory practice before an action is initiated in the courts. 29 U.S.C. § 626(b). While failure to adhere to the limitation period may result in the suit's dismissal as time-barred, the 300/180 day filing periods under the ADEA are not "jurisdictional prerequisites" to maintaining a legal action. Rather, the ADEA filing period is more in the nature of a statute of limitations that is subject to equitable modification. *See Wright v. State of Tennessee*, 628 F.2d 949 (6th Cir.1980) (en banc); *Kale v. Combined Ins. Co. of America*, 861 F.2d 746 (1st Cir.1988) (plaintiff may modify the length of ADEA filing period through equitable estoppel and equitable tolling). *See also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982) (analogous filing period under Title VII is subject to equitable modification).

---

**1.** The Civil Rights Act of 1991, Pub.L. No. 102–166, signed into law November 21, 1991, overturns *Patterson*'s interpretation of the § 1981 term "make and enforce contracts."

Tennessee is a deferral state. TENN. CODE ANN. § 4–21–101 (1985) ("It is the purpose and intent of the general assembly by [the enactment of the Tennessee Human Rights Act] to provide for execution within Tennessee of the policies embodied in ... the Age Discrimination of Employment Act of 1967, as amended ...").[2] Whether the limitations period in this case began to run January 12, 1984 (the date the plaintiff was notified that she would be laid off), February 24, 1984 (the date she was actually laid off), or August 24, 1984 (the date her layoff became permanent) is not important because the plaintiff filed her age discrimination charge with the EEOC on August 27, 1985, more than 300 days from the most recent date of the alleged discrimination.

■ In the face of the statute of limitations the plaintiff asserts that the limitations period should be equitably tolled. Specifically, the plaintiff states that equitable tolling is appropriate because "there is no evidence that she was ever advised by the EEOC, or that she could have been aware of her rights under ADEA prior to August 27, 1985." The plaintiff, in other words, pleads ignorance of the law.

Judge Bownes, in *Kale v. Combined Ins. Co. of America*, 861 F.2d 746 (1st Cir. 1988), offers an analysis for ADEA cases "where a plaintiff is claiming excusable ignorance of the filing deadline." *Id.* at 753.

> [A] court should initially determine whether the plaintiff had either actual or constructive knowledge of his rights under the ADEA. Actual knowledge occurs where an employee either learns or is told of his ADEA rights, even if he becomes only generally aware of the fact that there is a statute outlawing age discrimination and providing relief therefor.... Constructive knowledge, on the other hand, is "attributed" to an employee in situations where he has retained an attorney ... or where an employer has

fulfilled his statutory duty by conspicuously posting the official EEOC notices that are designed to inform employees of their ADEA rights....

> If the court finds that the plaintiff knew, actually or constructively, of his ADEA rights, ordinarily there could be no equitable tolling based on excusable ignorance.... If, however, the employee has no knowledge of his rights and his ignorance is due to misleading conduct by the defendant or failure of the defendant to post the required EEOC notices, then an initial case for equitable tolling has been made.

*Id.* (citations omitted).

At first glance, the plaintiff appears not to possess either actual or constructive knowledge. There is no evidence that the plaintiff had actual knowledge of her rights under the ADEA prior to the filing of her ADEA charge. And constructive knowledge cannot be automatically attributed to the plaintiff because the plaintiff did not retain an attorney until after she filed her ADEA charge. The record is silent as to whether the defendant posted an ADEA notice. Yet, the plaintiff was by no means ignorant of the existence of employment discrimination laws, or the channels through which to protect her employment rights. Before being laid off (but after receiving notice that she would be laid off) the plaintiff visited the EEOC office and filed a charge of employment discrimination. Further, in her response to the defendant's motion to dismiss, the plaintiff admits to having "worked closely with the EEOC beginning February 15, 1984." Moreover, upon the appointment of the younger Ms. Richmond as Micrographics Clerk on February 20, 1984, the plaintiff effectively became aware of a possible age discrimination charge. The plaintiff, however, did not discuss such a charge with the EEOC, seek legal counsel, or otherwise pursue this claim until one and one-half years later. On these facts, we find that

---

**2.** Tennessee's age discrimination law took effect shortly after this court's en banc decision in *Wright v. State of Tennessee*, 628 F.2d 949 (6th Cir.1980), in which we held that the ADEA no-

tice requirement is subject to equitable modification. Thus, in *Wright* we applied the 180 day limitations period to the plaintiff's ADEA action. 29 U.S.C. § 626(d)(1).

the plaintiff had constructive knowledge of her rights under the ADEA.

■ We take guidance from the Eleventh Circuit's decision in a closely analogous case, *McClinton v. Alabama By-Products Corp.*, 743 F.2d 1483 (11th Cir. 1984). In *McClinton*, a 55-year old plaintiff was discharged from his job, only to be replaced by a 27-year old worker. Friends told the plaintiff that he might have a "discrimination suit." Within thirty days of his termination he visited the local Labor Department office and telephoned the Labor Relations Board, but to no avail. The plaintiff then waited nearly a year before obtaining counsel and filing an ADEA charge with the EEOC. The *McClinton* court refused to toll the statute of limitations, stating:

> When an employee is generally aware of his rights, ignorance of specific legal rights or failure to seek legal advice should not toll the [limitation] period. A contrary result would permit an aggrieved employee aware of his general rights to sit on those rights until he leisurely decided to take action. This would be inconsistent with and undermine the underlying ADEA policy of encouraging speedy, non-judicial resolutions to age discrimination employment disputes.

*Id.* at 1486. We adopt the reasoning of the Eleventh Circuit in the present case. Accordingly, we reject the plaintiff's claim that excusable ignorance should toll the statute of limitations.

■ The plaintiff states in her brief that "the employer's failure to post notices of rights under ADEA" may constitute misconduct by an employer capable of tolling the statute of limitations. The plaintiff, however, does not allege that the defendant, Richards Medical Company, engaged in such misconduct.[3] Even if we were to infer such an allegation, the record does not reveal that the plaintiff pursued it below, nor does the brief provide support for such an allegation on appeal. Vague and conclusory allegations of misconduct are insufficient to state a claim. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987).

In sum, the equities do not favor tolling the 300 day limitations period.

## IV. Title VII Claim

The District Court dismissed the plaintiff's Title VII action for failure to file the complaint within 90 days after receipt of the first right to sue letter issued by the EEOC to the plaintiff. The District Court accepted the defendant's argument that the plaintiff's request that the Commission withdraw its first no cause determination "was merely an attempt to avoid the statute of limitations by manipulating the EEOC to obtain a notice of right to sue dated after December 1984." Memorandum Opinion at 4. The court noted that while the Commission has discretion to withdraw its determination and to issue multiple notices of right to sue, as happened here, "these [notices] can be challenged by showing that the sole purpose of reconsideration was to extend the initial notice period," *Id.* (citing *Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d 241 (5th Cir.1980)). In *Gonzalez* the Commission decided to reconsider a no cause determination forty-one days after it had issued its right to sue letter. The Commission ultimately issued a second no cause determination and a second right to sue letter. The Fifth Circuit held that a suit filed within 90 days of the issuance of the second right to sue notice was timely. It noted in dicta, however, that the validity of a second notice could be challenged if "the sole purpose of reconsideration was to extend the initial notice period." *Gonzalez*, 610 F.2d at 246. It was this dicta on which the District Court relied.

The plaintiff and the EEOC, appearing as amicus curiae, assert that the District Court erred in dismissing the Title VII claim as time-barred. The Commission

---

**3.** Part IV of the plaintiff's brief simply states that "[e]quitable tolling is appropriate when the party against whom it is asserted is guilty of misconduct.... An example of such misconduct may be the employer's failure to post notices of rights under ADEA...." (citations omitted).

points to the regulations which it has promulgated and notes that they authorize District Directors to reconsider no cause determinations and issue second right to sue letters. The regulations further provide that the 90 day limitations clock begins anew upon the issuance of the second right to sue letter. The Commission argues that courts, as a matter of law, ought to let stand decisions of the District Director made pursuant to these regulations. The defendant, by contrast, argues that we should deem these regulations invalid on the ground that they "impermissibly alter the ... statutory procedure and limitations provisions established by Congress."

We thus face two issues. First, are the EEOC regulations governing the reconsideration of Commission determinations valid? Second, if the regulations are valid, can a court review the Commission's decision to reconsider a cause determination? We consider the first issue in part IV A and the second issue in part IV B. Because Judges Guy and Wellford disagree with part IV B of this opinion, Judge Guy writes for the court as to the issue regarding the reviewability of the Commission's reconsideration decision.

Our discussion in part IV A proceeds as follows. With respect to the validity of the Commission's regulation, we face two possible standards of review. If the regulation is "substantive," then the level of deference we afford it "depend[s] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *EEOC v. Arabian American Oil Co.,* — U.S. —, 111 S.Ct. 1227, 1235, 113 L.Ed.2d 274 (1991) (quoting *General Electric v. Gilbert,* 429 U.S. 125, 142, 97 S.Ct. 401, 411, 50 L.Ed.2d 343 (1976)). If, however, the regulation is "procedural," then we apply a different standard of review. Congress authorized the Commission "to issue, amend, or rescind suitable *procedural* regulations to carry out the provisions of [the Act]." Section 713(a) of Title VII, Civil Rights Act of 1964, 42 U.S.C. § 2000e–12(a) (emphasis added). The regulation at issue, 29 C.F.R.

§ 1601.21 (1984), was promulgated pursuant to § 713(a). *See* 52 Fed.Reg. 11503, 11504 (1987); 45 Fed.Reg. 48614, 48617 (1980). We must sustain a procedural regulation "so long as it is '*reasonably related* to the purposes of the enabling legislation.'" *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 369, 93 S.Ct. 1652, 1661, 36 L.Ed.2d 318 (1973) (emphasis added). For reasons explained below, we find that § 1601.21 is a procedural regulation reasonably related to the purposes of § 713(a). We therefore uphold the regulation as valid.

Part IV B examines under what circumstances the EEOC's decision to reconsider a cause determination can be challenged in and reviewed by a district court. In dissent, I take the position that the Commission's decision to reconsider a cause determination is not subject to judicial review. A corollary of my position is that the revocation of the previous right to sue letter and vacation of the 90 day limitations period which follow from the decision to reconsider are also immune from judicial scrutiny. Consequently, I would hold that the District Court erred in dismissing the plaintiff's Title VII claim as time-barred.

Despite the panel's disagreement over part IV B, we nevertheless affirm the lower court's dismissal of the claim.

## A. Validity of EEOC Regulations

■ Title VII of the Civil Rights Act of 1964 embodies Congress' intent and preference that discrimination complaints be resolved through the administrative process rather than through litigation. 42 U.S.C. § 2000e et seq. To this end, Congress required that a series of conditions be fulfilled before a Title VII suit can be brought by a private party. 42 U.S.C. § 2000e–5. For example, the party claiming discrimination must file a charge with the Commission within a specified period of time after the alleged unlawful employment practice occurred. *Id.;* § 2000e–5(e). The Commission, in turn, must serve notice of the charge on the charged party within ten days after the charge is filed. *Id.;* § 2000e–5(a), (e). The Commission must

then determine whether there is reasonable cause to believe the charge is true, whereupon the Commission may either bring an action against the charged party or dismiss the charge. *Id.;* § 2000e–5(f)(1). If the charge is dismissed, or if the Commission has not filed an action or has not entered into a conciliation agreement between the affected parties within 180 days from the date the charge was filed, then the Commission shall issue to the charging party a Notice of Right to Sue. Only after these steps have been completed may the charging party bring a civil action, and even then, they must file the complaint within ninety days of receiving the right to sue letter. *Id.* The purpose of these procedures is "to encourage reconciliation and arbitration of employee grievances prior to litigation." *Morgan v. Washington Mfrg. Co.,* 660 F.2d 710, 711 (6th Cir.1981).

To implement Title VII's administrative scheme Congress authorized the Commission "to issue, amend, or rescind suitable *procedural* regulations to carry out the provisions of [Title VII]." Section 713(a) of Title VII, Civil Rights Act of 1964, 42 U.S.C. § 2000e–12(a) (emphasis added). Pursuant to its rulemaking authority under § 713(a), the Commission adopted regulations governing the processing of charges and the issuance of right to sue notices upon the termination of agency review. The regulation concerning reconsideration of determinations appears in Part 1601 of Title 29 of the Code of Federal Regulations, entitled "PROCEDURAL REGULATIONS." Section 1601.1 of Part 1601 informs us that "[t]he regulations set forth in this part contain the *procedures* established by the [EEOC] for carrying out its responsibilities in the administration and

enforcement of Title VII...." 29 C.F.R. § 1601.1 (1984) (emphasis added).[4]

As noted above, 42 U.S.C. § 2000e–5 mandates that the Commission determine whether there is reasonable cause to believe a charge of employment discrimination. If the Commission finds that reasonable cause does not exist, then the Commission must dismiss the charge. Subsections (a) and (b) of § 1601.21 of the Commission's regulations reiterate these powers and duties. 29 C.F.R. § 1601.21(a), (b) (1984).[5] Subsection (b), however, goes further. It provides that "[t]he Commission may ... on its own initiative *reconsider* its [dismissal or no cause determination]." 29 C.F.R. § 1601.21(b) (emphasis added). The Commission's power of reconsideration, unlike its powers of investigation and dismissal, lacks a statutory analog.[6]

Subsection (d) of § 1601.21 delegates to the Commission's District Directors (among others) the Commission's power "to dismiss a charge, make a determination, issue a Letter of determination ... and *reconsider* determinations." 29 C.F.R. § 1601.21(d) (1984) (emphasis added).[7] *See also* 29 C.F.R. § 1601.19(g). Subsection (d) also elaborates upon the consequences of a District Director's decision to reconsider a dismissal or reasonable cause determination.

In cases where the issuing Director decides to reconsider a dismissal ... a notice of intent to reconsider will promptly issue. If such notice of intent to reconsider is issued within 90 days from receipt of a notice of right to sue and the charging party has not filed suit ... *the notice of intent to reconsider will vacate the dismissal or letter of determination and revoke the notice of right to sue* ... After reconsideration the issuing

---

4. Textual citations to the regulations refer to those in effect during 1984–85, the time during which the EEOC acted upon the plaintiff's charges. The regulations have since been revised, and where appropriate, we note this fact.

5. Section 1601.21(a) appears in slightly expanded form as § 1601.21(a) in the 1991 version of the Commission regulations. Section 1601.21(b) appears unaltered as § 1601.21(b) in the 1991 version of the Commission regulations.

6. The absence of a statutory analog does not render the regulation invalid, for "[t]he power to reconsider is inherent in the power to decide." *Albertson v. Federal Communications Commission,* 182 F.2d 397, 399 (D.C.Cir.1950). *See also* 45 Fed.Reg. 73035 (1980) (citing *Albertson* for EEOC's authority to promulgate subsections (b) and (d) of § 1601.21).

7. Section 1601.21(d) (1984) appears with minor changes as § 1601.21(d) in the 1991 version of the Commission regulations.

Director will issue a determination anew ... [W]here the notice of right to sue has been revoked, *the issuing Director will ... issue a notice of right to sue anew which will provide the charging party with 90 days within which to bring suit.* 29 C.F.R. § 1601.21(d)(1) (1984) (emphasis added).[8]

The defendant contends that § 1601.21 is "invalid" because it is not "procedural." The defendant asserts that the regulation "add[s] remedies not provided in Title VII," and asks that we review the regulation under the standard set forth by the Supreme Court in *General Electric v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), and applied last term by the Court in *EEOC v. Arabian American Oil Co.*, — U.S. —, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) ("*Aramco*"). In *Gilbert* the Court wrote that "Congress, in enacting Title VII, did not confer upon the EEOC authority to promulgate rules or regulations pursuant to that Title." 429 U.S. at 141, 97 S.Ct. at 410. It went on to state that the level of deference afforded the EEOC "'will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" *Id.* at 142, 97 S.Ct. at 411 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944)). *See Aramco*, 111 S.Ct. at 1235 (quoting *Gilbert*). The defendant argues that when the regulation is examined in light of the *Gilbert–Aramco* factors, it should be given "no effect." An examination of these two cases, though, reveals that they are inapposite.

*Gilbert* presented the issue whether an employer's exclusion of benefits for disability during pregnancy was a *per se* violation of Title VII. The Supreme Court found that an EEOC regulation designating pregnancy to be a temporary disability deserving of coverage under an employer disabili-

ty plan was unsupported by the Act's legislative history and was directly contradicted by two opinion letters issued by the Commission. 429 U.S. at 142–45, 97 S.Ct. at 411–12. Thus, the Court did not defer to the regulation to determine the breadth of Title VII's sex discrimination provisions. Particularly noteworthy is the Court's explicit distinction between the regulations at issue in *Gilbert* and those falling within § 713(a), 42 U.S.C. § 2000e–12(a). The *Gilbert* Court made clear that "[n]o one contends ... that the ... regulation [here] is *procedural* in nature or effect." 429 U.S. at 141, n. 20, 97 S.Ct. at 411, n. 20 (emphasis added).

In *Aramco*, as in *Gilbert*, the EEOC sought to define the scope of Title VII's coverage. The issue in *Aramco* was whether Title VII's protection extended to United States citizens employed abroad by American employers. The Commission argued that it did. Once again the Court refused to defer to the Commission's interpretation. Citing *Gilbert*, the Court found the Commission's position undercut by prior conflicting agency interpretations of Title VII, and by the lack of clear Congressional intent to apply the statute overseas.

In both *Gilbert* and *Aramco*, the Court declared that it would not defer to EEOC policy purporting to expand the Act's coverage where such policy was unsupported by past agency pronouncements and clear Congressional intent. Courts have framed the general rule emerging from these cases thus: "Section 713(a) of Title VII ... preclude[s] the EEOC from issuing *substantive* regulations." *Emerson Elec. Co. v. Schlesinger*, 609 F.2d 898 (8th Cir.1979). *Accord EEOC v. Raymond Metal Products Co.*, 530 F.2d 590, 592–93 (4th Cir. 1976) (Congress through section 713(a) intended to restrict the Commission to issuance of procedural rules, and to deny the Commission the power to make substantive rules that create rights and obligations).

Section 1601.21, however, is unlike the regulations struck down in *Gilbert* and *Ar-*

---

**8.** Section 1601.21(d)(1) appears unaltered as § 1601.21(d)(1) in the 1991 version of the Com-

mission regulations.

*amco.* Looking to its history, function and effect, it is clear that the regulation is procedural, not substantive. When subsections (b) and (d) of § 1601.21 were first published in 1980 as an interim rule for notice and comment, the Chair · of the EEOC explained that "[t]he Commission needs to retain flexibility in cases involving private respondents because the Commission ordinarily may not sue or intervene in suits or issues on which it has not found cause and attempted conciliation." 45 Fed. Reg. 48614, 48615 (1980). The Chair continued,

> The Commission's experience is that in reviewing for possible litigation, information may be discovered which may give rise to the Commission believing that an administrative error had been made in making a finding of no cause. The Commission may wish to reconsider at that point and after complying with Title VII procedures, bring suit. Thus it is essential that the Commission be able to reconsider determinations....

*Id.*

The Commission's power to reconsider determinations is consonant with Congress's intent that discrimination complaints be resolved administratively. Experience taught the Commission both that new evidence may come to light and that Commission staff · may make mistakes when compiling and assessing the charging party's case file. Consequently, the Commission erected a safety net to catch those cases inadequately handled in their initial administrative processing. Specifically, it promulgated subsections (b) and (d) of § 1601.21 which provide the Commission additional opportunity to investigate, evaluate, and if necessary, conciliate a charge of employment discrimination. Central to the safety net is the rule by which the previous right to sue letter is revoked and the 90 day limitations period vacated when the Commission decides to reconsider a no cause determination. By revoking the right to sue letter and vacating the limitations period, the Commission is able to retain jurisdiction over the charge and carry out its administrative responsibilities. Nothing in the terms or operation of § 1601.21 indicate that the regulation expands the scope of Title VII's coverage or in any way creates additional rights under the Act. To the contrary, the regulation's history, language, and implementation reveal it to be a simple housekeeping measure, procedural in nature and effect.

This conclusion is supported by *Raymond Metal Products*, 530 F.2d 590 (4th Cir.1976). There, the court examined a predecessor to § 1601.21(b), 29 C.F.R. § 1601.19b(d) (1976). That regulation, like its successor at issue here, explicitly authorized District Directors to reconsider determinations as to reasonable cause.[9] The court held that the regulation "conforms to the statutory requirement that it be procedural." 530 F.2d at 594. It "does not define the rights and duties of the parties. Instead, it prescribes the methods by which the agency acts." 530 F.2d at 593. *See also Associated Dry Goods Corp. v. EEOC*, 720 F.2d 804, 809 (4th Cir.1983) (EEOC's rules and procedures allowing disclosure of information procured by it in the course of its investigation to charging parties are procedural rather than substantive and thus, are valid under § 713(a) of Title VII, 42 U.S.C. § 2000e–12(a)); *Reynolds Metals Co. v. Rumsfeld*, 564 F.2d 663, 669–70 (4th Cir.1977) (agreement between EEOC and Office of Federal Contract Compliance Programs for exchange of charges

---

9. 29 C.F.R. § 1601.19b(d) (1976) provided in relevant part that:

> The District Directors ... may, upon completion of an investigation, dismiss charges, make and issue determination as to reasonable cause, and serve a copy thereof upon the parties, and make and approve conciliation agreements in those cases where such authority has been delegated to them by the Commission.... The District Directors ... may, however, on their own motion, reconsider their determination at any time and, when they do so, they shall promptly notify the [affected parties] ... of their subsequent decision on reconsideration.

Section 1601.19b(d) (1976) differs from the 1984 and 1991 regulations in that it does not state that a decision to reconsider will revoke a previously issued right to sue letter. This difference, though, goes to agency procedure: it does not affect the substantive rights of the parties.

and information does not affect substantive rights of employers); *Hall v. EEOC*, 456 F.Supp. 695, 702 (N.D.Cal.1978) (implementation of rapid charge processing rules does not determine rights or obligations of parties); *Sears Roebuck & Co. v. EEOC*, 435 F.Supp. 751, 761 (D.D.C.1977) (EEOC regulation, 29 C.F.R. § 1601.20 (1976), concerning the disclosure of investigative data is merely procedural). Accordingly, we hold that the EEOC's power to reconsider cause and no cause determinations, as established by § 1601.21 of the Commission's regulations, is procedural in purpose and effect.

■ Put differently, § 1601.21 derives its authority from § 713(a) of Title VII which authorizes the Commission "to issue, amend, or rescind suitable procedural regulations to carry out the provisions of [the Act]." The Supreme Court has set out the standard of review for regulations promulgated pursuant to an "empowering provision of a statute [which] states simply that the agency may 'make ... such rules and regulations as may be necessary to carry out the provisions of this Act.'" *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973). Under *Mourning*, we sustain a regulation promulgated pursuant to § 713(a) "so long as it is 'reasonably related to the purposes of the enabling legislation.'" *Id.*

The analysis which led us to conclude the regulation is procedural persuades us that it is reasonably related to the purpose of § 713(a). Specifically, Congress intended that employment discrimination claims be resolved administratively. Towards this end, Congress conferred upon the Commission power to implement procedures which will facilitate its processing of charges. The Commission, in turn, determined that it needed the power to reconsider cause determinations. Thus it enacted procedural regulation 1601.21. That regulation both permits reconsideration and provides that a prior right to sue letter is vacated when reconsideration is undertaken. As one court has noted, "[i]f the [Commission] ... does not have the power to rescind [its] earlier notice of right-to-sue, then [its] authority to fully reconsider is severely circumscribed." *Trujillo v. General Electric Co.*, 621 F.2d 1084, 1086 (10th Cir.1980).

To require a discharged employee to bring suit against his employer at a time when the District Director has reconsidered his earlier determination of no-cause ... and the administrative processes designed to effect conciliation and *avoid* litigation are in the process of going forward, is to us a rather strange requirement.

*Id.* at 1086–87 (emphasis in original).

We agree. Accordingly, we find that subsections (b) and (d) of 29 C.F.R. § 1601.21 (1984) meet the reasonable relationship requirement of *Mourning*. The regulation is therefore valid.

B. Reviewability of Commission's Reconsideration Decision

The defendant argued below, and the District Court agreed, that the plaintiff fraudulently induced the Commission to issue a notice of reconsideration and to vacate the 90 day limitations period attaching to the initial right to sue letter. As a result, the Court refused to recognize the limitations period attaching to the second right to sue letter issued after the Commission reconsidered its first no cause determination. Instead, the Court looked to the first 90 day period, determined that the plaintiff failed to file suit within that period, and dismissed the plaintiff's Title VII claim as time-barred.

I conclude that the EEOC's decision to reconsider a cause determination, and the procedural consequences attaching to such a decision, should not be subject to judicial review. Therefore, I would hold that the District Court erred when it reviewed the Commission's reconsideration decision.

The issue here does not implicate the integrity of the EEOC's decision-making process where that process in turn directly determines whether an individual will be granted or denied tangible benefits within the Commission's power to disburse. At issue is the deference to be accorded the EEOC's decision whether or not to re-visit

its prior refusal to advocate on an individual's behalf. To permit courts to review what is a completely discretionary decision having only a very attenuated impact on either the plaintiff or defendant to a Title VII action serves no purpose.

Subsection (d) of § 1601.21 of the Commission's regulations expressly provides that "for determinations issued by his or her office, [each District Director] may on his or her own initiative reconsider such determinations." As the Commission notes in its brief, the decision to reconsider a reasonable cause determination and reopen a case file may be prompted by any number of factors. Assuming for the sake of argument that the plaintiff's reconsideration request in this case was fraudulent—that it was made solely to extend the limitations period—the small benefit to be gained from reviewing the Commission's decision is substantially outweighed by the judicial expense and administrative uncertainty caused by the review. To review a Commission's reconsideration decision adequately, the court must hold a mini-hearing. Though this inquiry may allow the court to avoid the merits by dismissing the discrimination claim on jurisdictional grounds, the judicial savings are illusory. Rather, a new layer of review and additional grounds for appeal are spawned by a court's review of the Commission's reconsideration power—a power characterized by broad discretion.

What is more, though judicial review of an EEOC reconsideration decision may identify previously undetected fraud, this gain in accuracy likely will be offset by a loss of administrative effectiveness. The EEOC argues that the court's ability to second guess Commission reconsideration decisions "will create uncertainty that will give charging parties and employers a strong incentive *not* to ask the Commission to reconsider its determinations, since they will not know whether or not such reconsid-

eration will stop the 90 day clock." Amicus Brief at 16. If parties do not ask for reconsideration when they legitimately believe their case deserves reconsideration, then the Commission will be deprived "of the opportunity to correct a mistaken determination it issued before the parties resort to the judicial forum." *Id.* Allowing courts to infringe on the Commission's discretion to reconsider cause determinations can impede administrative resolution of discrimination claims by forcing premature litigation.

By refusing to recognize the Commission's revocation of the prior right to sue letter, the District Court, in effect, declared that the Commission is unable to protect itself against fraud by a charging party. Because judicial review of Commission reconsideration decisions serves neither the goals of Title VII nor principles of judicial economy, I would adopt a blanket rule insulating from judicial review Commission decisions to reconsider determinations as to reasonable cause. Once the Commission or an authorized official decides to reconsider a reasonable cause determination and so notifies the parties, the previous right to sue notice automatically would be revoked, in accordance with the 29 C.F.R. § 1601.21. Further, the 90 day limitations period would begin anew upon the issuance of a subsequent right to sue letter by the Commission. In the interim between the revocation of previous right to sue letter and the issuance of another one, the charging party would not be able to file suit.[10] Naturally, I do not mean to intimate that the courts' responsibility for reviewing the *merits* of an employment discrimination claim should be diminished in any way.

Because the plaintiff brought suit within 90 days of the issuance of the second right to sue notice, I would hold that the District Court erred in dismissing as time-barred

---

**10.** Rule 4(a)4 of the Federal Rules of Appellate Procedure imposes a similar restriction on parties seeking to appeal a district court judgment. That rule states that a timely served Motion to Reconsider tolls the appeals period until entry of the order granting or denying the motion.

Both Rule 4(a)4 and the EEOC regulations promote judicial economy by preventing a reviewing court from entertaining a case until the body below has completed its adjudicatory or conciliatory functions.

the plaintiff's Title VII claim.[11]

## C. Merits

■ Proceeding to the merits, we affirm the District Court's dismissal of the plaintiff's Title VII claim, albeit on different grounds. In a Title VII employment discrimination case, the plaintiff bears the initial burden of submitting evidence to support a prima facie case of discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). More precisely, the plaintiff must produce "evidence sufficiently strong to raise an inference that [the employer's conduct was] racially motivated." *McKenzie v. Sawyer*, 684 F.2d 62, 71 (D.C.Cir.1982). Reviewing the record, we find no facts from which to infer discriminatory treatment. We note in particular that the defendant hired another

black woman shortly after notifying Ms. Jackson of her impending layoff. This fact strongly discredits the plaintiff's Title VII claim.[12] In sum, the Title VII action was properly dismissed.

## V.

For the foregoing reasons, we AFFIRM the District Court's dismissal of the plaintiff's § 1981, ADEA, and Title VII claims.

RALPH B. GUY, Jr., Circuit Judge, concurring in part and dissenting in part.

■ I agree with all of Judge Merritt's opinion, except Part IV B, from which I dissent. In Part IV B, Judge Merritt writes: "[T]he EEOC's decision to reconsider a cause determination, and the procedural consequences attaching to such a decision, should not be subject to judicial review." In my view, we are not considering

---

**11.** This result would also accord with equity in this case. When Ms. Jackson asked for reconsideration of the EEOC's no-cause determination, she had three weeks remaining before the expiration of the 90 day period attaching to her first right to sue notice. Had the Commission thought that there was no basis for the request, as the District Court concluded, it could have so informed Ms. Jackson when it received her request. Ms. Jackson would then have had ample time to file suit. As it happened, Ms. Jackson was entitled to rely on the Commission's decision to withdraw its determination, and the regulations setting forth the effect of that decision. In cases where the Commission has erroneously led a charging party to believe the administrative process was not complete, thus causing that party to miss the deadline for filing a complaint, courts have consistently applied principles of equitable tolling to prevent the party from being penalized for the Commission's mistakes. *See, e.g., White v. Dallas Independent School Dist.,* 581 F.2d 556, 562–63 (5th Cir.1978) *(en banc); Zambuto v. American Tel. & Tel. Co.,* 544 F.2d 1333, 1336 (5th Cir.1977); *Ferguson v. The Kroger Company,* 545 F.2d 1034 (6th Cir.1976); *DeMatteis v. Eastman Kodak Co.,* 520 F.2d 409, 411 (2d Cir.1975). To time-bar Ms. Jackson, when she has relied on the administrative process, would place her in a worse predicament than the plaintiffs in the above-mentioned cases to whom the courts afforded procedural relief.

**12.** We wish to make clear, however, that the fact that an employer replaces a Title VII plaintiff with a person from within the same protected class as the plaintiff is not, by itself, *suffi-*

*cient* grounds for dismissing a Title VII claim. Unlike the ADEA statute, Title VII does not require that the plaintiff, as part of a prima facie case, show that he or she was "replaced by a person outside the protected class." *Compare Gagne v. Northwestern Nat'l Ins. Co.,* 881 F.2d 309, 313 (6th Cir.1989) ("The elements of a *prima facie* case of age discrimination require that the charging party demonstrate that ... (4) ... she was replaced by a person not a member of the protected class.") *with Tye v. Polaris Joint Vocational School Bd. of Educ.,* 811 F.2d 315, 317 n. 1 (6th Cir.), *cert. denied,* 484 U.S. 924, 108 S.Ct. 285, 98 L.Ed.2d 246 (1987) ("As this circuit has previously noted, important differences exist between the type of discrimination actionable under Title VII and age discrimination under the ADEA.... Because of [the] differences, cases interpreting the procedural framework under one statute are not automatically applicable to the other," (citing *Laugesen v. Anaconda Co.,* 510 F.2d 307, 313 n. 4 (6th Cir.1975)). As the Eighth Circuit has observed, "[c]ertainly, if a woman alleging sex discrimination is replaced by a female, this fact is relevant in evaluating the employer's motive. Nevertheless, it is entirely conceivable that a woman discharged and eventually replaced by another woman may be able to establish that she was the object of impermissible discrimination related to her gender." *Walker v. St. Anthony's Medical Center,* 881 F.2d 554, 558 (8th Cir.1989). *Accord Meiri v. Dacon,* 759 F.2d 989, 995–96 (2d Cir.1985) (requiring a Title VII plaintiff to demonstrate that he or she was replaced by a person outside the protected class "is inappropriate and at odds with the policies underlying Title VII."); *Giannotti v. Foundry Cafe,* 582 F.Supp. 503, 506 (D.Conn.1984).

the right of a district court to engage in a review of the EEOC's decision to reconsider a matter. Rather, the district court here looked at the motives of the plaintiff in the case before him and found that the plaintiff's motion for reconsideration was merely a subterfuge designed to extend the time in which to bring suit. I believe that a district judge should retain the right to make such a determination. I express no opinion on the general question of the scope of judicial review, if any, of an EEOC reconsideration determination because I find it unnecessary to reach that issue in deciding this case.

WELLFORD, Senior Circuit Judge, concurring.

 I concur in Judge Merritt's opinion except as to part IVB thereof. I am in agreement with Judge Guy's separate opinion that holds that EEOC's decision to reconsider, even if made within ninety days, is, under appropriate circumstances, subject to judicial review. I likewise agree with Judge Guy that a district court judge retains the right to make the kind of determination which was reached in this case. I would affirm the district court's decision on this basis as well as for the other reasons given by Judge Merritt.

Finally, I would hold that under comparable circumstances where the basis for EEOC reconsideration is a claimant's unsubstantiated claim, not based upon newly discovered evidence, judicial review is appropriate to preclude an unwarranted extension of time, beyond the statutory scheme, in which to file a complaint.