NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0790n.06
Filed: September 13, 2005

Case No. 04-5925

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| KARL VINCENT TARTT, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| CITY OF CLARKSVILLE, and LAVOYED | ) | DISTRICT OF TENNESSEE |
| HUDGINS, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |

BEFORE: BOGGS, Chief Judge; BATCHELDER and GIBBONS, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. Plaintiff-Appellant Karl Tartt, a black man

and former police officer, appeals the district court's grant of summary judgment to Defendants-

Appellees City of Clarksville and Police Chief Lavoyed Hudgins (collectively, "Clarksville"),

dismissing Tartt's claims of employment discrimination based on his race in violation of 42 U.S.C.

§ 2000e ("Title VII"), the Tennessee Human Rights Act, T.C.A. § 4-21-401(a)(1) ("THRA"), and

42 U.S.C. § 1981 ("§ 1981"). Because Tartt failed to make out a prima facie case of discrimination,

and because even if he did make out a prima facie case, he did not present sufficient evidence to

show that it was his race—as opposed to his myriad disciplinary and personal problems—that

prevented him from being re-hired, we affirm the judgment of the district court.

BACKGROUND

Tartt was hired by the Clarksville Police Department ("CPD") on June 1, 1998. Over the following three years, he was the subject of numerous disciplinary actions by CPD. On December 4, 1998, Tartt was arrested for child abuse, for which he was placed on administrative leave. The charges were dismissed in March 1999 and, after an investigation determining that Tartt had not violated any departmental policies, CPD reinstated him on May 17, 1999. On October 8, 1999, Tartt's neighbor filed a complaint against him for "conduct perceived to be improper while off duty." CPD investigated the charges and concluded that no departmental policy had been violated. On or about September 1, 2000, Tartt admitted to his supervisor that he had used his patrol car while off duty in violation of CPD rules, for which he received counseling. Two weeks later Tartt again violated CPD rules by transporting his son in his police vehicle, for which he received a two-day suspension. On or about May 21, 2000, Tartt made an arrest and seized a quantity of marijuana and $130 cash. Tartt failed to turn the cash in to CPD as evidence, and was given a verbal reprimand. On October 8, Tartt again used his patrol car to transport a family member, for which he once again received counseling. On December 12, 2000, Tartt was given a "counseling report" for going to his off-duty job at Wal-Mart, clocking in, and then leaving to work another job at the Santa Fe Restaurant. Tartt was cited for "conduct . . . unbecoming an officer and bringing disrepute upon the Police Department." On January 31, 2001, Tartt received a reprimand for being late to roll call, although he disputes that he was actually late.

Tartt's most significant disciplinary action involved a complaint filed against him by Marilu Armstrong on February 10, 2001, alleging that on February 7, 2001, Tartt pulled his gun and shot at Armstrong's dog while Armstrong's young daughter was standing next to the dog. Sergeant Phillip Ashby conducted an internal investigation of this incident, and determined that Tartt had

2

violated departmental rules for Neglect of Duty when "he failed to back away from a vicious dog tied by a cord, fired his weapon in close proximity to Armstrong and her daughter[,] . . . failed to think of the safety of the fifteen children in the neighborhood when he fired his weapon[,] . . . [and] failed to try other options before he fired his weapon." As a result of the investigation, Ashby recommended to Chief Hudgins that he dismiss Tartt from his duties. Hudgins agreed with Ashby's conclusions and began the process of terminating Tartt's employment. Tartt was placed on administrative leave effective March 1, 2001, because of the pending disciplinary action, and on March 6, 2001, Tartt submitted a letter of resignation. Tartt argues on appeal that he was given the option of resigning in lieu of having a termination appear on his record, but Clarksville contends that Tartt resigned for personal reasons, including that his wife was "running around on him."[1]

Tartt was dealing with marital difficulties at the time of his resignation. On March 20, 2001, two weeks after resigning, Tartt petitioned the Montgomery County General Sessions Court for an Order of Protection directed at his wife, Sondra. Tartt claimed that Sondra had assaulted him on March 15, 2001, and that she had done so on other occasions in the past. Tartt asked that Sondra be prohibited from "stalking him." On April 19, 2001, CPD officers responded to a domestic assault call at Tartt's home, and arrested both Tartt and his wife for assault.

In June 2001, Tartt met with Hudgins to request that he be re-hired. Tartt claims that during this meeting he was told that it was "policy" for officers who leave the CPD to wait one year before being eligible for re-hire. Hudgins disputes saying this, and Clarksville admits that no such official policy exists at CPD. Hudgins claims that if he did make such a statement, it would have been in

---

[1]Tartt alleges in his complaint that on March 6, 2001, he "quit for personal reasons." Nonetheless, the record indicates that Chief Hudgins drafted a letter dated February 26, 2001, in which he indicated that he was terminating Tartt's employment. Whether this letter was ever delivered to Tartt is in dispute, but the letter does lend some credence to Tartt's claim that he was constructively discharged from his job.

the context of the significant personal and disciplinary problems Tartt would have to surmount in order to be re-hired.

On January 7, 2002, Tartt filed a complaint with both the EEOC and the Tennessee Human Rights Commission ("THRC"), in which he claimed he was discriminated against because of his race when the CPD refused to re-hire him. In this complaint Tartt claims that the discrimination began on June 21, 2001—the date on which Hudgins allegedly told him of the one-year policy for re-hire—and continued thereafter. On May 3, 2002, the EEOC sent Tartt a notice of his right to sue, advising that it was dismissing his charge because, based on its investigation, it was unable to conclude that discrimination had taken place. Tartt filed his complaint in this case on July 25, 2002, and filed an amended complaint on September 27, 2002.

In granting summary judgment to Clarksville, the district court found that Tartt had put forth sufficient evidence to make out a prima facie case of race discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. Noting that Clarksville conceded that Tartt had established the first three elements of his prima facie case, the district court assumed, for purposes of summary judgment, that Tartt had created a genuine dispute of material fact as to the fourth element—whether he was treated less favorably with regard to his request to be re-hired than similarly situated white officers at CPD. The district court found, however, that Tartt had not presented sufficient evidence to rebut the legitimate non-discriminatory reason proffered by Clarksville for CPD's refusing to re-hire him—his significant disciplinary and personal problems—and dismissed his complaint.

**ANALYSIS**

**I.      Standard of Review**

4

We review de novo a district court's order granting summary judgment. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. *Id.* All ambiguities and inferences to be drawn from the facts should be resolved in favor of the party opposing summary judgment, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986).

## II.     Title VII Claim

### A.     Time Period for Examining Discrimination

Tartt's argument that CPD discriminated against him in its refusal to re-hire him three months after his resignation often morphs into an argument that he (like black officers generally) was discriminated against by CPD during his tenure with the department, that is, before the department's refusal to re-hire him, and that such discrimination contributed to his being forced to resign in March 2001. Tartt is barred, however, from bringing Title VII discrimination claims for incidents prior to CPD's refusal to re-hire him, for two reasons.

First, such claims are untimely. Tennessee is a "deferral state" for purposes of the federal discrimination statutes. *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 375-76 (6th Cir. 2002); *Jackson v. Richards Med. Co.*, 961 F.2d 575, 578-79 (6th Cir. 1992); *see* T.C.A. § 4-21-101. In a deferral state, when a plaintiff institutes the relevant state proceedings, as Tartt did with his THRC complaint, he must file his EEOC charge within 300 days of the alleged discrimination. 42 U.S.C. § 2000e-5(e)(1); *see Weigel*, 302 F.3d at 375-76 (applying 300-day bar to ADEA claim); *Jackson*,

5

961 F.2d at 578-79 (same); *Lawton v. State Mut. Life Assur. Co. of America*, 101 F.3d 218, 221 (1st Cir. 1996) (applying 300-day bar in Title VII context in deferral state of Massachusetts); *Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 599-600 (2d Cir. 1999) (applying 300-day bar in Title VII context in deferral state of New York); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (holding that a Title VII plaintiff alleging a discrete act of discrimination, who files a grievance with the appropriate state agency, must file his EEOC charge within 300 days of the alleged act). While the 300-day bar is not jurisdictional, it does have the effect of a statute of limitations, and is not to be waived without good cause. *Weigel*, 302 F.3d at 376. Tartt did not file his EEOC charge until January 7, 2002, more than 300 days after his March 6, 2001, resignation from CPD. Thus, the 300-day bar prevents Tartt from claiming discrimination for acts prior to his resignation, which limits him to his claims of discrimination regarding his attempt to be re-hired in June 2001 (which was within 300 days of his January 7, 2002, EEOC filing).

Second, even if Tartt had filed his EEOC charge early enough to capture events prior to his request to be re-hired, he would still be barred from pursuing such claims by the narrow scope of the discrimination claimed in his EEOC charge. Tartt's EEOC charge claims only discrimination in CPD's refusal to re-hire him, and alleges the earliest date of discrimination as June 21, 2001, (the date on which Hudgins allegedly told Tartt that he had to wait at least one year for re-hire). "It is well settled that federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge." *Weigel*, 302 F.3d at 379 (internal quotation omitted). The "judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Id.* at 380 (internal quotation omitted). An investigation

6

of Tartt's claims of discrimination in the terms and conditions of his employment would not be "reasonably expected to grow out of" the EEOC's investigation of CPD's refusal to re-hire Tartt; therefore, because the EEOC has not had the opportunity to investigate Tartt's pre-resignation claims, we lack subject matter jurisdiction to entertain them.

### B. Prima Facie Case

Title VII prohibits discrimination by an employer against any individual on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). The framework for analyzing a Title VII claim was established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Section 1981 and THRA claims are analyzed in the same manner as claims under Title VII.[2] *Patterson v. McLean Credit Union*, 491 U.S. 164, 185-88 (1989), *overruled on other grounds as recognized in*, *Hamilton v. City of Martin*, No. 96-5651, 1997 WL 720479, at *3 (6th Cir. Nov. 12, 1997); *Harper v. BP Exploration & Oil Co.*, 896 F. Supp. 743, 747 (M.D. Tenn. 1995), *aff'd*, 134 F.3d 371 (6th Cir. 1998); *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996).

A plaintiff bears the initial burden of establishing a prima facie case of racial discrimination under Title VII by a preponderance of the evidence. *McDonnell Douglas*, 411 U.S. at 802. To establish a prima facie case of racial discrimination, the plaintiff must show that: 1) he is a member of a protected class; 2) he suffered an adverse employment action; 3) he was qualified for the position in question; and 4) he was treated less favorably than similarly situated non-protected employees. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). The parties agree that Tartt has established the first three elements of this test, but Clarksville contends that Tartt is unable to show that in its refusal to re-hire him three months after the termination of his employment, CPD

[2]Section 1981 and THRA claims are not governed by the same EEOC restrictions and statutes of limitations as Title VII claims, however. We address this *infra* at Section II.

7

treated Tartt less favorably than similarly situated non-protected employees. The district court assumed, for purposes of summary judgment, that Tartt had created a genuine issue of material fact as to whether he was treated less favorably than similarly situated white officers.

In his brief on appeal, Tartt does not compare himself to white officers who resigned and sought re-hire. Nonetheless, we have reviewed Clarksville's brief, the district court opinion, and the record, and it appears that at some point Tartt identified eight white officers who resigned and were re-hired within a year: Phil Ashby, Elaina Back, Larry Boren, Richard Brown, Mike Davis, Judy Keim, Jason Wright, and Kelly Darland. None of these officers, however, was similarly situated to Tartt.

In *Mitchell*, we set out the standard for evaluating whether a protected plaintiff is similarly situated to the proffered non-protected employees:

> It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the "comparables" are similarly situated *in all respects*. Thus, to be deemed "similarly situated," the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

964 F.2d at 583 (internal citations omitted). Therefore, for purposes of Tartt's re-hiring discrimination claim, to be similarly situated to Tartt a white officer would have to have resigned with a spotty disciplinary record and been re-hired by Chief Hudgins within one year.[3] None of the eight proffered white employees meets this standard.

---

[3]In formulating this standard, it is important to note that there is no indication in the record that Hudgins told Tartt that he could never again work at CPD. In fact, Hudgins claims that he wanted Tartt to take a longer period of time off to get his life straightened out, and that then he could perhaps come back to work at CPD. Since Tartt claims that Hudgins told him that he could not be re-hired for at least a year, we use this time period for purposes of the similarly situated analysis.

8

Elaina Back is the only one of these officers who resigned and was re-hired within one year by Chief Hudgins. Back, however, had a spotless disciplinary record, and only resigned in the first place for personal reasons having nothing to do with her job at CPD. Jason Wright resigned and more than a year later, was re-hired by Hudgins, but there is no evidence that Wright ever had any disciplinary problems. Ashby and Brown are the only two of the eight who were re-hired despite significant disciplinary problems in their pasts, but their disciplinary problems were not as pervasive as Tartt's. Moreover, Ashby was re-hired by a different police chief (Rossen) in 1995, six years before Tartt's resignation; and Brown was re-hired by yet another police chief (Slayden) in 1989, twelve years before Tartt's resignation and nearly two years after his own resignation. *See id.* (requiring, among other things, same supervisors for employees to be similarly situated). Therefore, Tartt has failed entirely to present evidence that he was treated less favorably than similarly situated employees. We disagree with the district court's assumption that Tartt made out a prima facie case of racial discrimination.

## C. Pretext

The district court held that, although it was assuming that Tartt had made out a prima facie case of discrimination, he failed to refute Clarksville's proffered non-discriminatory reason for refusing to re-hire him within one year—namely, his numerous personal and disciplinary problems. We agree that, even if Tartt could make out a prima facie case of discrimination, he has failed to show that Clarksville's proffered non-discriminatory reason for not re-hiring him was pretextual.

To survive a motion for summary judgment after the employer has articulated a legitimate, non-discriminatory reason for its actions, "the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chems.*

9

*Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994). The plaintiff must "show by a preponderance of the evidence either (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate his discharge, or (3) that they were *insufficient* to motivate discharge." *Id.* at 1084 (internal quotation omitted).

Tartt has not made any of these showings. First, it is undisputed that Tartt had the proffered disciplinary and personal problems. Second, Tartt has put forth no evidence to show that Chief Hudgins was not actually motivated by Tartt's personal and disciplinary problems in his decision not to re-hire him a mere three months after Tartt's employment terminated. Even if we consider the intermittent acts of discrimination that Tartt cites in the CPD over a twenty-year period, none of this evidence touches upon Chief Hudgins. In fact, Tartt's own brief indicates that Hudgins hired two black officers, one Asian officer, and one Hispanic officer during the very time period in 2001 when Tartt claims that Hudgins refused to re-hire him because he discriminated against black people.[4] And finally, Tartt's numerous personal and disciplinary problems were clearly sufficient to justify his not being re-hired a mere three months after his employment terminated. Therefore, the district court properly found that Tartt failed to put forth sufficient evidence of pretext.[5]

## III.     Section 1981 and THRA Claims

As noted *supra* in Section II.B, Tartt's § 1981 and THRA claims are analyzed under the same framework as his Title VII claim; thus, because Tartt's claims of discrimination in refusal to re-hire

---

[4]Hudgins's tenure as police chief lasted from June 1, 1998, to December 31, 2001.

[5]Tartt's case for pretext is also weakened by his inability to show that similarly situated non-protected officers were treated more favorably than he was, and his attempt to compare himself to new hires must be rejected. *See Weigel*, 302 F.3d at 378 ("In order to show that an employer's proffered nondiscriminatory explanation is pretext on the grounds that a similarly situated employee received disparate treatment for the same conduct, the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in all of the relevant aspects.") (italics and internal quotation omitted).

fail under Title VII, they also fail under § 1981 and the THRA.  But since § 1981 and THRA claims are not subject to the same 300-day statute of limitations[6] and EEOC-charge restrictions as Title VII claims, some of Tartt's arguments regarding racial discrimination at CPD prior to his termination might be considered under these statutes.  The district court, therefore, should have distinguished Tartt's § 1981 and THRA claims from his Title VII claim.  Tartt, however, fails even to mention either of these claims in his brief on appeal, much less to assign as error the district court's dismissing them, and our examination of the record below reveals that Tartt did not address either claim in his brief opposing Clarksville's motion for summary judgment.  Tartt has therefore waived any appeal of his pre-termination § 1981 and THRA claims.  *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 310-11 (6th Cir. 2005) (treating an argument not raised in the appellate brief as waived for purposes of appeal).

## CONCLUSION

Accordingly, for the foregoing reasons, we **AFFIRM** the judgment of the district court.

---

[6]Tartt's § 1981 claim is subject to a four-year statute of limitations, *see Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004), while his THRA claim must be made "one (1) year after the alleged discriminatory practice ceases."  T.C.A. § 4-21-311(d).