**Jane Acomb LEAKE, Plaintiff-Appellant,**

v.

**UNIVERSITY OF CINCINNATI et al., Defendants-Appellees.**

No. 76–2430.

United States Court of Appeals, Sixth Circuit.

Argued April 20, 1978.

Decided Sept. 4, 1979.

Rehearing and Rehearing En Banc Denied Oct. 10, 1979.

---

9. Kaye was convicted of a securities law violation in the Southern District of New York in 1959.

Charles E. Guerrier, Barbara Kaye Besser, Jane M. Picker, Cleveland, Ohio, for plaintiff-appellant.

Abner W. Sibal, Beatrice Rosenberg, E. E. O. C., Washington, D.C., for amicus curiae E. E. O. C.

S. Arthur Spiegel, Cohen, Todd, Kite & Spiegel, Paul Nemann, Cincinnati, Ohio, for defendants-appellees.

Before CELEBREZZE, LIVELY and KEITH, Circuit Judges.

KEITH, Circuit Judge.

Plaintiff, a history professor at Raymond Walters General and Technical College of the University of Cincinnati appeals from a judgment of the district court dismissing her sex discrimination complaint. The district court held that her claim under Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e *et seq.*, was untimely,[1] and that her claim under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, must fail because Title IX does not create a private right of action.[2] We reverse.

Plaintiff, head of the History, Philosophy and Political Science Department of Raymond Walters General Technical College (hereinafter College), has been employed by the University of Cincinnati (hereinafter University) since 1961. She was a visiting professor at the main campus of the University from 1965 to 1969, at which time she was hired as an associate professor at the College where she was elected head of the History Department in 1970. For some time, plaintiff had indicated an interest in obtaining an appointment to the regular staff of the History Department at the main campus of the University.[3]

During the academic year 1971–1972, Professor Park, an assistant professor of history at the University's main campus, was on leave of absence and the University sought a one-year replacement for him. Plaintiff did not apply for this position as she desired a regular appointment rather than a temporary one-year appointment. Guido Ruggiero was hired by the University to fill the one-year vacancy. However, in the winter of 1972, Professor Park's leave was extended for another year, and the University again sought a person to fill the new temporary opening. Twenty persons responded to the University's publicity concerning the new opening, but the search committee only interviewed Professor Ruggiero and recommended his appointment to the second one-year opening. In March of 1972, the Department of History, however, recommended that Professor Ruggiero be given a regular two-year appointment rather than the one-year temporary position. This appointment was made following certain budget modifications and without additional publicity regarding the opening for the regular position.

During the summer of 1972, plaintiff became aware that a regular appointment in medieval history might be made at the main campus and on August 7, 1972, she wrote to Professor Aeschbacher, head of the History Department at the main campus, to inquire about the job. Professor Aeschbacher responded to plaintiff's letter in September, 1972, indicating that no opening existed in medieval history but that should an opening occur, he would inform her of it and consider her application.

On October 3, 1972, the Board of Directors of the University approved Professor Ruggiero's regular appointment. Upon learning of this appointment, plaintiff contacted Professor Aeschbacher seeking an explanation. Professor Aeschbacher replied on November 15, 1972, that at the time he responded to plaintiff's letter in September, he was of the opinion that no vacancy existed in the History Department because Professor Ruggiero's appointment had been recommended by the Department the previous March.

Plaintiff thereupon retained counsel. Following conversations between plaintiff's counsel and counsel for the University, the University's counsel wrote to plaintiff's counsel on December 27, 1972, as follows:

> This letter is to confirm our telephone conversation in which I informed you that this matter has just recently been referred to my desk for consideration. Please understand that while your client's complaints have no doubt taken quite some time to fruit, the matter is a novelty to me and I will need to start at the beginning. University vacation schedules will require that I take a week or two to respond.

---

1. The United States Equal Employment Opportunity Commission participated as *Amicus curiae* for plaintiff on the appeal of this issue.

2. The United States Department of Justice participated as *Amicus curiae* for plaintiff on the appeal of this issue.

3. She applied for appointment to a regular position at the main campus both in 1967 and 1968, but did not receive the appointments.

It is my understanding that you will give me sufficient time to research the matter in return for the assurance I gave you on the phone that time for my investigation will not be used by the University to in any way prejudice your client's rights with regard to any statute of limitations.

It was not until February 9, 1973, that the University's counsel rejected plaintiff's claim of discrimination. Plaintiff's charge was filed with the EEOC on April 17, 1973.

The district court found that the alleged act of discrimination occurred on October 3, 1972, at the latest, when the University's Board of Trustees approved Professor Ruggiero's appointment to the regular staff. Since plaintiff did not file her charges with the EEOC until April 17, 1973, more than 180 days after the alleged discriminatory act, the district court concluded that plaintiff's claim was time-barred under 42 U.S.C. § 2000e–5(e).[4] Acting in reliance upon this Court's decision in *Guy v. Robbins & Myers, Inc.*, 525 F.2d 124 (6th Cir. 1975), *rev'd sub nom. International Union of Electrical, Radio and Machine Workers, AFL–CIO, Local 790 v. Robbins & Myers, Inc.*, 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976), the district court rejected plaintiff's argument that the 180-day limit was tolled during the time that she engaged in private, voluntary negotiations with the University on the University's assurance that it would not assert a time-bar claim against her. The district court also rejected plaintiff's argument that the alleged violation was a continuing one and that the 180-day time period, therefore does not apply. Instead, the court found that the alleged violation was an isolated transaction.

On appeal, plaintiff alleges that her Title VII claims should not have been dismissed for failure to file her charges with the EEOC within 180 days of October 3, 1972,[5] because negotiations between plaintiff and the University and the affirmative conduct of defendant as set forth in the University counsel's letter previously quoted tolled the time period within which plaintiff was required to file charges. We agree.

Title VII was enacted to assure equal employment opportunities by eliminating discrimination based on race, color, religion, sex, or national origin. *Johnson v. Railway Express Agency*, 421 U.S. 454, 457, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). In *Electrical Workers*, the Supreme Court noted that equitable tolling principles did not apply where a plaintiff engages in grievance proceedings pursuant to a collective bargaining agreement. The Court noted,

---

**4.** 42 U.S.C. § 2000e–5(e) provides:

(e) Time for filing charges. A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

**5.** In the alternative, plaintiff argues on appeal that the time period within which she was required to file charges with the EEOC began to run on November 15, 1972, rather than October 3, 1972, and hence her charge was filed within the 180-day limit, because this was the date plaintiff received formal notification from Professor Aeschbacher concerning Professor Ruggiero's status. The district court's determination that the October 3 date was the date of the alleged act of discrimination as indicated by plaintiff in her formal charge to the EEOC was not clearly erroneous. *International Union of Electrical Radio and Machine Workers, AFL–CIO, Local 790 v. Robbins and Myers, Inc.*, 429 U.S. 229, 234–35, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976). The EEOC as *Amicus curiae* also conceded that the alleged act of discrimination occurred on October 3, 1972. See Brief of Amicus Curiae, EEOC at 4.

however, that unlike *Burnett v. New York Central Railroad Co.*, 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965), plaintiff had not been prevented from asserting her rights. 429 U.S. 237, n. 10, 97 S.Ct. 441 and accompanying text. This result is consistent with the Supreme Court's prior holding in *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), where the Court addressed the issue of whether the timely filing of charges with the EEOC tolls the statute of limitations in suits based upon the same facts brought pursuant to 42 U.S.C. § 1981.

■ Plaintiff did not bring her dispute to the University's attention pursuant to a collective bargaining agreement. Moreover, the correspondence between plaintiff and the University clearly put the University on notice that plaintiff was asserting rights pursuant to Title VII and provided the University with the protections which limitation periods are intended to provide. *Johnson v. Railway Express Co., Inc.*, 421 U.S. at 466–67, n. 12–14, 97 S.Ct. 441; *Burnett v. New York Central Railway Co., supra; Tipler v. E. I. DuPont DeNemours & Co.*, 443 F.2d 125 (6th Cir. 1971). See also, *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 372–373, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977); *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394–395, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977). It was during the period of voluntary negotiations that plaintiff and the University agreed that she would give the University sufficient time to investigate her complaints, and the University agreed that it would not use the time it spent in its investigation to prejudice plaintiff with respect to any statute of limitations. It appears to us that the University's express statements, and plaintiff's reliance thereon, could reasonably have led plaintiff to delay in the filing of her charges with the EEOC.

■ Title VII time limitations are jurisdictional in the sense that that phrase is used in relation to statutes of limitations and equitable principles should apply in circumstances which warrant their application. We note that the Supreme Court has not squarely addressed the precise issue presented here; that is, whether Title VII time periods may be tolled on equitable grounds. However, in *Harris v. Walgreen's Distribution Center*, 456 F.2d 588 (6th Cir. 1972), this Circuit clearly held that, in appropriate circumstances, Title VII time periods may be tolled on equitable grounds.

■ These cases fully support the conclusion that the mere fact that a federal statute providing for substantive liability also sets a time limitation upon the institution of suit does not restrict the power of the federal courts to hold that the statute of limitations is tolled under certain circumstances not inconsistent with the legislative purpose. *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 559, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). See *Gabriele v. Chrysler Corp.*, 573 F.2d 949, n. 15 (6th Cir. 1978), vacated and remanded, —— U.S. ——, 99 S.Ct. 2819, 61 L.Ed.2d 273 (1979), *on remand*, 604 F.2d 996 (6th Cir. 1979). See also *Weaver v. Joseph Schlitz Brewing Co.*, 551 F.2d 122 (6th Cir. 1977). The circumstances present in this case lead us to the conclusion that the time period here was tolled on equitable grounds. *Ott v. Midland-Ross Corporation*, 600 F.2d 24 (6th Cir. 1979); *Harris v. Walgreen's Distributing Center, supra; Goodman v. City Products Corp.*, 425 F.2d 702 (6th Cir. 1970). This Court is not alone in concluding that Title VII's time limitations may be extended for equitable reasons. See e. g., *Hart v. J. T. Baker Chemical Corp.*, 598 F.2d 829 (3d Cir. 1979); *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924 (5th Cir. 1975).

■ Finally, the district court, citing *Cannon v. University of Chicago*, 406 F.Supp. 1257 (N.D.Ill.1976), aff'd, 559 F.2d 1063 (7th Cir. 1977), dismissed Count II of the complaint on the ground that § 1681 does not provide a private right of action for relief from sex discrimination. The Supreme Court recently decided pursuant to a grant of certiorari in the *Cannon* case that a private right of action is inferable under Title IX. See *Cannon v. University of Chicago*, —— U.S. ——, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). However, in *Romeo*

**260**

*Community Schools v. HEW, et al.*, 600 F.2d 581 (6th Cir. 1979), this Court held that § 1681 does not deal with sex discrimination against employees of educational institutions but was enacted to prohibit discrimination against students who are the intended beneficiaries of federal financial assistance to education. In light of this construction of Title IX, it does not appear that plaintiff's cause is benefitted by the Supreme Court's ruling in *Cannon, supra.*

The portion of the judgment of the district court dismissing plaintiff's claim under Title VII is reversed and the case is remanded for further proceedings.