70 F.3d 116
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Larry VANA, Plaintiff-Appellant,
v.
MALLINCKRODT MEDICAL, INC. and Mallinckrodt, Inc.,
Defendants-Appellees.
 No. 94-3424.
 United States Court of Appeals, Sixth Circuit.
 Nov. 8, 1995.
 
 Before: NELSON and BOGGS, Circuit Judges; and GILMORE, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff Larry Vana appeals from the district court's entry of summary judgment for the defendants, Mallinckrodt Medical, Inc., and Mallinckrodt, Inc. (collectively, "Mallinckrodt"). Vana sued after he was fired by Mallinckrodt, alleging breach of contract, promissory estoppel, and age discrimination under the Age Discrimination in Employment Act of 1967, 29 U.S.C. Sec. 621 et seq. ("ADEA"), and Ohio Rev.Code Sec. 4112.99. In Vana v. Mallinckrodt Medical Inc., 849 F.Supp. 576 (N.D.Ohio 1994), the district court held that Mallinckrodt was entitled to summary judgment because Vana had failed to produce evidence to support his claims. Because we also conclude that Vana has not met his burden under Fed.R.Civ.P. 56, we affirm the judgment of the district court.
 
 
 2
 * Vana worked for Mallinckrodt as a regional sales manager until he was discharged on July 12, 1990. Vana filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 5, 1992, well beyond the 300-day time limit established by 29 U.S.C. Sec. 626(d)(2). Vana concedes that he filed outside the statutory period, but argues that the facts of this case warrant applying the doctrine of equitable tolling.
 
 
 3
 Vana was first hired by Mon-A-Therm Corporation in 1976. Mallinckrodt, which is incorporated in Delaware and has its corporate headquarters in St. Louis, Missouri, acquired Mon-A-Therm in April, 1988. As a regional sales manager for Mallinckrodt, Vana operated out of his home in Westfield Center, Ohio, and says he "went to Defendants [sic] main office in St. Louis, Missouri about 4-5 times between 1988 through 1990." Plaintiff's Answers to Defendants' First Interrogatories at 12. Vana claims that he was unaware that he was the victim of age discrimination until he saw an EEOC poster at an unemployment office; Vana also asserts that, several months after his firing, he heard that Mallinckrodt had fired the second-oldest person working during Vana's tenure, which revealed a "pattern" of discrimination that alerted him to the alleged discrimination against him.
 
 
 4
 This circuit has held that the ADEA's 180-day and 300-day filing requirements[1] are statutory prerequisites rather than being jurisdictional, so that failure to comply with them may be excused under the doctrine of equitable tolling. Wright v. Tennessee, 628 F.2d 949, 953 (6th Cir.1980) (en banc ). However, we have stressed that equitable tolling "is not an escape valve through which jurisdictional requirements will evaporate since '[t]he tolling of the statutory periods on equitable grounds is usually very much restricted.' " Brown v. Mead Corp., 646 F.2d 1163, 1165 (6th Cir.1981) (denying equitable tolling to Title VII plaintiff who did not commence suit upon receiving a facially valid, albeit incorrect, EEOC authorization).
 
 
 5
 The rationale behind equitable tolling is "that a defendant should not be permitted to escape liability by engaging in misconduct that prevents the plaintiff from filing his or her claim on time." English v. Pabst Brewing Co., 828 F.2d 1047, 1049 (4th Cir.1987). As the Supreme Court stated in Glus v. Brooklyn Eastern District Terminal: "[N]o man may take advantage of his own wrong.... [T]his principle has been applied in many diverse classes of cases by both law and equity courts and has frequently been employed to bar reliance on statutes of limitations." 359 U.S. 231, 232-33 (1959). Accordingly, we noted in Brown that the doctrine was applicable where an employer's affirmative representations had caused the plaintiff to delay filing a claim, citing Leake v. University of Cincinnati, 605 F.2d 255 (6th Cir.1979).
 
 
 6
 This circuit has also found the doctrine appropriate, even in the absence of employer misconduct, where an employee had failed to file promptly a Title VII action in federal court because she had erroneously, although timely, filed in a state court.[2] Fox v. Eaton Corp., 615 F.2d 716 (6th Cir.1980). We based the ruling in Fox on two premises:
 
 
 7
 [T]he underlying purpose of the statute of limitations was satisfied by the filing of the original action in that the defendant received timely notice of the statutory claim and the plaintiff displayed diligence in asserting his or her rights. In neither case was the defendant subjected to any unfairness.
 
 
 8
 Id. at 719. Clearly, neither of these conditions are satisfied in this case: Mallinckrodt received notice of Vana's claim only when he filed suit almost two years after his discharge, and Vana has been dilatory in pursuing his rights, both of which are unfair to a defendant.
 
 
 9
 Vana argues that because he rarely visited Mallinckrodt's headquarters in St. Louis, the EEOC notices posted there failed to apprise him of his rights. Therefore, a court should toll the limitations period until he actually became aware of his discrimination. Mallinckrodt counters that it satisfied its legal duties by posting EEOC-approved notices in prominent places in its headquarters, as well as listing its EEOC policies in its employee handbook, so that Vana had constructive notice of EEOC policy.
 
 
 10
 Thus, the question in this case is whether Mallinckrodt has engaged in conduct that was "wrong," such that holding Vana to the 300-day period would constitute an unfair advantage. We hold that Mallinckrodt's compliance with statutory and EEOC requirements ensuring notice was not wrong and we refuse to toll the limitations period.
 
 II
 
 11
 Once Mallinckrodt raised Vana's noncompliance with the 300-day filing requirement as a defense, Vana bore the burden of showing that equitable tolling was appropriate. Ross v. Buckeye Cellulose Corp., 980 F.2d 648, 661 (11th Cir.1993); Bayer v. United States Dep't of Treasury, 956 F.2d 330, 332-33 (D.C.Cir.1992).
 
 
 12
 Under 29 U.S.C. Sec. 627, employers must display a notice prepared by or approved by the EEOC: "Every employer, employment agency, and labor organization shall post and keep posted in conspicuous places upon its premises a notice ... setting forth information as the Commission deems appropriate to effectuate the purposes of this chapter." The EEOC has also promulgated regulations mandating that "[s]uch a notice must be posted in prominent and accessible places where it can be readily observed by employees, applicants for employment and union members." 29 C.F.R. Sec. 1627.10. An employer's failure to post the mandatory EEOC notices may be grounds for equitable tolling. Kephart v. Institute of Gas Technology, 581 F.2d 1287, 1289 (7th Cir.1978); Smith v. American President Lines, Ltd., 571 F.2d 102 (2d Cir.1978).
 
 
 13
 Despite Vana's strained reading of the record,[3] there is no evidence that Mallinckrodt failed to post the mandatory notices, only that Vana states that he never saw the notices. See Posey v. Skyline Corp., 702 F.2d 102 (7th Cir.1983) (granting summary judgment where defendant testified that EEOC notices had been posted and plaintiff merely stated that he did not remember seeing one). Equitable tolling is inappropriate where a plaintiff has either actual or constructive notice of his rights. As this circuit has previously explained:
 
 
 14
 Actual knowledge occurs where an employee either learns or is told of his ADEA rights, even if he becomes generally aware of the fact that there is a statute outlawing age discrimination and providing relief therefor.... Constructive knowledge, on the other hand, is 'attributed' to an employee in situations where he has retained an attorney ... or where an employer has fulfilled his statutory duty by conspicuously posting the official EEOC notices that are designed to inform employees of their ADEA rights....
 
 
 15
 If the court finds that the plaintiff knew, actually or constructively, of his ADEA rights, ordinarily there could be no equitable tolling based on excusable ignorance.... If, however, the employee has no knowledge of his rights and his ignorance is due to misleading conduct by the defendant or failure of the defendant to post the required EEOC notices, then an initial case for equitable tolling has been made.
 
 
 16
 Jackson v. Richards Medical Co., 961 F.2d 575 (6th Cir.1992), quoting Kale v. Combined Ins. Co. of Am., 861 F.2d 746, 753 (1st Cir.1988) (emphasis added) (citations omitted).
 
 
 17
 Vana offers two cases that have held that posting EEOC notices at a company's principal place of business is insufficient notice for employees who work primarily off-site, Charlier v. S.C. Johnson & Son, Inc., 556 F.2d 761 (5th Cir.1977), and Edgeworth v. Fort Howard Paper Co., 673 F.Supp. 922 (N.D.Ill.1987). The Fifth Circuit explained in Charlier its reasons for concluding that "notice adequate for one group of employees does not necessarily suffice for another group working primarily in a different locality":
 
 
 18
 While section 627 and regulation 850.10 do not require that an employer actually inform employees of the ADEA and its applicability, they do contemplate, [sic] the posting of notice "in prominent and accessible places where it can readily be observed by employees" so that older employees may know of their new rights. Because constructive notice often falls far short of its intended purpose, rigorous adherence to the mandate is essential, especially in view of the relatively short 180-day filing period....
 
 
 19
 556 F.2d at 764 (citations omitted).
 
 
 20
 Charlier is unconvincing for several reasons. First, that court admits that Congress and the EEOC "do not require that an employer actually inform employees of the ADEA and its applicability," yet the court proceeds to impose almost precisely that duty judicially. When so motivated, Congress can be remarkably specific in mandating notification requirements, and its failure to do so here seems to be a reasonable compromise between the interests of potential plaintiffs and defendants in discrimination suits.
 
 
 21
 Second, the Charlier court noted the goal of ensuring that "older employees may know of their new rights." The ADEA and similar anti-discrimination legislation may have been a novelty eighteen years ago, but most workers today are aware of some form of legal protection against discrimination. This is not to say that notice is unnecessary, because Congress and the EEOC have decided that it is, but it does weaken the argument for creating an "equitable" exception to an explicit limitations period based on an employee's ignorance of the law. See Jackson, 961 F.2d at 580, quoting McClinton v. Alabama By-Products Corp., 743 F.2d 1483, 1486 (11th Cir.1984) ("When an employee is generally aware of his rights, ignorance of specific legal rights ... should not toll the [limitation] period"). Moreover, Vana's plea of ignorance of his legal rights is undermined by his assertion that statements in Mallinckrodt's employee handbook created a contractual relationship, for the handbook also contained a description of Mallinckrodt's policies against discrimination. Regardless of whether the statements in the handbook rose to the level of binding promises, we can impute a general knowledge of the law prohibiting age discrimination or, at the very least, decline to pardon Vana's failure to act in accordance with such knowledge on the basis of equity.
 
 
 22
 Third, the Charlier court cites the shortness of the filing period as justifying a broad interpretation of the notice provisions, but allowing the limitations period to be tolled by ignorance of a specific legal right is "inconsistent with and [would] undermine the underlying ADEA policy of encouraging speedy, non-judicial resolutions to age discrimination employment disputes." Jackson, 961 F.2d at 580, quoting McClinton, 743 F.2d at 1486. Finally, by promulgating specific procedures for employers, Congress and the EEOC simplify compliance by providing relatively clear-cut guidelines that can be easily followed; a fact-specific, employee-specific notice standard increases uncertainty and increases the likelihood of litigation over what is essentially a threshold procedural matter.
 
 
 23
 The district court in Edgeworth relied on Charlier in holding that "a maximum of twelve possible opportunities over six years to view the required ADEA notice fails to qualify as the placement of the notice in a 'prominent and accessible place[ ] where it can be readily observed." 673 F.Supp. at 926. That court opined:
 
 
 24
 When Congress passed the ADEA ... they probably contemplated that each employee would have an opportunity to view that poster numerous times, if not every day that they worked. Congress could have required employers to inform each employee of their rights under the ADEA upon hiring or by way of a paper insert in their pay. The advantage of requiring a posted notice instead is obvious; the personal notice would likely be long gone before an employee ever thought he had been discriminated against. A posted notice, however, would always be there for viewing. It is also probably true that Congress may not have considered the present situation, a full-time multi-year employee of a company that rarely ever sets foot upon the employer's premises. We are not, however, bound by this congressional lack of foresight when we apply equitable principles....
 
 
 25
 Edgeworth, 673 F.Supp. at 925-26.
 
 
 26
 We find this parade of "probablys" unpersuasive. First, the court's accusation of a "congressional lack of foresight" is weakened by the realization that Congress has not only had the opportunity to amend the notice provisions, but has in fact amended the ADEA several times. Thus, that body's failure to "update" the ADEA's notice provisions is just as likely due to Congress's satisfaction with the existing rules. Second, the Edgeworth court fails to consider some advantages of posting notices besides durability: low cost and simplicity of compliance. Congress may be reluctant to adopt a more fact-specific standard because it would be more expensive and unfamiliar to employers, as well as stimulating litigation and rewarding procrastination; every changed rule has a reliance and implementation cost. Finally, the rationale in Edgeworth is equally applicable to employees who never read the EEOC notices, although exposed to them on a daily basis--the law simply requires actual posting, not actual notice, and no amount of rationalization should transform the former into the latter.
 
 
 27
 The Fourth Circuit rejected the Charlier court's interpretation of the posting requirements in English v. Pabst Brewing Co., 828 F.2d 1047, 1050 (4th Cir.1987), commenting:
 
 
 28
 It might well be desirable to require employers to send ADEA notices to traveling sales representatives and others who work off the company's premises. Congress might adopt such a requirement in the future. The terms of the present statute and its implementing regulation, however, require, only that it be posted "in conspicuous places upon the employer's premises." Pabst complied with the terms of the statute, ... so English cannot invoke equitable tolling on that basis.
 
 
 29
 We agree with the Fourth Circuit. Moreover, those courts that have focussed on second-guessing Congress have been distracted from the critical inquiry concerning equitable tolling: whether the defendant somehow lulled or misled plaintiffs into letting their rights lapse. As we see it, meeting the statutory and regulatory requirements of Congress and the EEOC can in no way be construed as "engaging in misconduct that prevents the plaintiff from filing his or her claim on time," English, 828 F.2d at 1049, or constituting a "wrong ... [that] bar[s] inequitable reliance on statute of limitations."[4] Glus, 359 U.S. at 233. Thus, a plaintiff's failure to observe EEOC notices alone is not grounds for equitable tolling, where an employer has posted its EEOC notices at conspicuous and accessible locations.
 
 III
 
 30
 The district court also dismissed Vana's claim of age discrimination under state law as being untimely. Vana contends that age discrimination suits under Ohio Rev.Code Sec. 4112.9 are governed by a six-year statute of limitations, and he notes that Ohio courts have been inconsistent in applying statutes of limitations to Sec. 4112.9 actions. Mallinckrodt argues that either a six-month or one-year statute of limitations must be applied. The district court did not determine which limitations period was proper because it recognized that "the plain reality [is] that the debate over Sec. 4122.99 now centers on ... which of the two shorter periods is correct," either of which is sufficient to dispose of Vana's claim. Vana, 849 F.Supp. at 581. This common-sense approach resolved the issue and allowed the court to avoid the thornier question of deciding between the two shorter time limits.
 
 
 31
 Since the district court's decision, the Ohio Supreme Court has decided a case which specifically deals with the issue, an aid not then available to the district court. In Bellian v. Bicron Corp., the court held that "any age discrimination claim, premised on a violation described in [Ohio Rev.Code] Chapter 4112, must comply with the one-hundred-eighty-day statute of limitations period...." 634 N.E.2d 608, 610 (Ohio 1994) (emphasis added). Thus, it appears that the Ohio Supreme Court has validated the district court's decision to dismiss Vana's claim under Sec. 4112.99.[5]
 
 IV
 
 32
 Vana asserts that nine alleged representations made by Mallinckrodt created an implied employment contract, transforming him from an at-will employee to a contractual one. Thus, he reasons that Mallinckrodt breached this implied contract when it discharged him without just cause. The district court concluded as a matter of law that Vana did not or could not reasonably rely upon these representations as establishing a contract, and we agree.
 
 
 33
 Where there is no contract, or the contract is for an indefinite term, Ohio law presumes an at-will employment relationship. Humphreys v. Bellaire Corp., 966 F.2d 1037 (6th Cir.1992). Only evidence that clearly manifests a contrary intent may overcome the presumption. Henkel v. Education Resource Council, 344 N.E.2d 118 (Ohio 1976).
 
 
 34
 Some of these alleged representations are consistent with both an at-will employment status and a contractual relationship--for instance, Vana's assertions that "Mallinckrodt has a policy of treating its employees fairly" and that "Mallinckrodt 'will strive to ensure long-term job security." Plaintiff's Brief at 40. Other statements are worded broadly or state aspirations, such as Mallinckrodt's policy of trying to fill open positions through promotion or transfer or its "philosophy and practice of ... responding to the needs and desires of each individual employee in the best manner possible regarding salaries, benefits, job security, working conditions and other matters." Ibid. By no stretch of logic do these general statements manifest an intent to be bound in a contractual relationship. Vana also points to his prior one-year contract with Mallinckrodt, entered into when Mallinckrodt had just taken over Mon-A-Therm, which did contain a clause conditioning his discharge upon just cause. Vana concedes that the contract expired and was not renewed. If one can infer anything from that contract, it is only that Vana was once a contractual employee and that Mallinckrodt altered that status to an at-will relationship.
 
 
 35
 Vana also argues that statements contained in the employee handbook create a contract. He ignores the explicit disclaimer that the handbook is intended only for informational purposes and nothing should be construed as a contract or promise of future employment. Although a disclaimer alone will not always preclude a contractual relationship, the general terms of the handbook, considered in conjunction with Ohio's assumption of at-will status and the disclaimer, simply do not support Vana's interpretation and cannot overcome the presumption against the existence of a contract.
 
 V
 
 36
 For reasons similar to those for rejecting Vana's contractual argument, we deny Vana's claim based on promissory estoppel. Vana only learned of several of the alleged representations that allegedly created the contractual status during the discovery process for this suit: the statements were either made in depositions or found in Mallinckrodt's Policy Directives Manual, to which Vana lacked access during his employment. Therefore, Vana could not have relied upon those statements. It is hornbook law (and common sense) that an employee must know of a statement in order to rely on it. Kelly v. Georgia Pacific Co., 545 N.E.2d 1244, 1252-53 (Ohio 1989).
 
 
 37
 The remaining statements or actions are simply too vague or hortatory to create any kind of reliance, much less reasonable reliance--such as Mallinckrodt's policy of performance reviews. Likewise, statements by Mon-A-Therm's chief executive officer (and Vana's previous boss) that Mallinckrodt "wanted to take us and not dispose of us, but to get us into the fold and make sure everything was a smooth and continuing success" do not state a promise or the terms of employment. Significantly, Vana fails to explain how he relied upon these statements to his detriment, which is a necessary element of promissory estoppel. Mers v. Dispatch Printing Co., 483 N.E.2d 150, 154 (Ohio 1985). As a result, Vana has not established the final element of promissory estoppel: that injustice may be avoided only by enforcing the promise. Humphreys, 966 F.2d at 1041. Accordingly, we agree with the district court that Vana has not supported his legal theory with more than a scintilla of evidence.
 
 VI
 
 38
 For the reasons stated above, we AFFIRM the judgement of the district court granting summary judgment for defendant Mallinckrodt.
 
 
 
 *
 The Honorable Horace W. Gilmore, United States District Court Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Under 29 U.S.C. Sec. 626(d)(1), a plaintiff must provide notice of an intent to sue to the Secretary of Labor "within one hundred and eighty days after the alleged unlawful practice occurred," unless the alleged act of discrimination occurred in a so-called "deferral state," where the time limit is three hundred days, pursuant to Sec. 626(d)(2)
 
 
 [2]
 The court further qualified its holding in Fox with the condition that "there exists a reasonable legal theory for invoking the jurisdiction of that court." Id. at 719
 
 
 [3]
 Plaintiff relies on excerpts from the deposition of Charles Clark, General Manager of Vana's division, that purportedly create a material issue of fact concerning whether Mallinckrodt posted any notices at all. In fact, Clark admitted seeing EEOC notices posted at Mallinckrodt headquarters and knew that the notices were posted on the south and west walls of the building's entrance--he even recognized a reduced photocopy of the EEOC poster. However, Clark also stated that the reduced copy "did not look familiar to him," and when asked if he had seen "anything like this posted, he answered "I don't recall something looking like this." Clark's inability to identify a specific notice in a reduced form, coupled with his general awareness that the notices were posted, do not create a material issue of fact. Further, Mallinckrodt offered the unchallenged testimony of two witnesses confirming the placement and contents of the EEOC notices
 
 
 [4]
 Vana also offers a Third Circuit decision, Oshiver v. Levin, Fishbein, Sedran & Berman, as supporting the application of equitable tolling in this case. 38 F.3d 1380 (3d Cir.1994). Although that court allowed equitable tolling, it did not do so on the basis of the defendant's failure to post notices. Rather, Oshiver specifically alleged that her employer "actively misled her regarding the reason for his discharge," which the court, in the context of a Fed.R.Civ.P. 12(b)(6) motion to dismiss, was obliged to accept as true. Id. at 1392. In contrast, the district court here ruled in the context of a motion for summary judgment under Fed.R.Civ.P. 56. To avert summary judgment, plaintiffs must produce more than a scintilla of evidence supporting their claims--a court will not accept mere allegations as true
 In fact, Oshiver actually supports our holding in this case because the Third Circuit repeatedly noted that equitable tolling was appropriate only to correct wrongdoing where a plaintiff was "deceived ... into postponing the filing of a claim," "lulled ... into inaction," or was "actively misled. " Id. at 1388-89, 1392 (emphasis added). Vana bases his equitable tolling argument not on evidence of deception by Mallinckrodt, but rather on his absence from the corporate premises.
 
 
 [5]
 Shortly after deciding Bellian, the Ohio Supreme Court held in Cosgrove v. Williamsburg of Cincinnati Management Co., that Sec. 4122.99 "is a remedial statute, and is thus subject to [Ohio Rev.Code] 2305.07's six-year statute of limitations." 638 N.E.2d 991, 992 (Ohio 1994). However, Cosgrove did not undercut Bellian : as the dissent in Cosgrove explained, because age discrimination is specifically mentioned in Sec. 4112.02(N), and that subsection references a 180-day statute of limitations, the shorter period applies only to age discrimination suits. Id. at 998-99. All other employment discrimination actions, such as Ms. Cosgrove's suit alleging sex discrimination, are governed by the general six-year statute of limitations. Ibid