NOT RECOMMENDED FOR PUBLICATION

File Name: 20a0693n.06

Case No. 20-3700

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Dec 14, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| 3799 MILL RUN PARTNERS, LLC, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| CITY OF HILLIARD, OHIO, | ) | OHIO |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

BEFORE: SUHRHEINRICH, CLAY, and DONALD, Circuit Judges

**BERNICE BOUIE DONALD, Circuit Judge.** Nearly three years after the City of Hilliard denied 3799 Mill Run Partners, LLC's application for a zoning modification, the City admitted that it had applied the incorrect voting standard to the requested modification. Mill Run Partners then filed suit under 42 U.S.C. § 1983, alleging that the City's error amounted to a deprivation of property and liberty interests without due process of law. The district court dismissed the Complaint, holding that it was untimely under the two-year statute of limitations, and rejected Mill Run Partners' argument that the City's misinterpretation of its own law warranted equitable tolling. For the reasons explained below, we AFFIRM the district court's decision.

I.

Plaintiff-Appellant 3799 Mill Run Partners, LLC ("Mill Run Partners") is an Ohio limited liability company and owns real property in Hilliard, Ohio. Defendant-Appellee the City of Hilliard ("the City") is a chartered municipal corporation operating under the laws of Ohio. In late 2015 and early 2016, Mill Run Partners engaged Point Blank Shooting Range ("Point Blank") about the prospects of opening a shooting range and retail gun store in Hilliard. The proposed property for the store was located within the Mill Run Planned Unit Development ("PUD") district, which does not allow for a shooting range. Mill Run Partners and Point Blank, anticipating that they would later obtain the necessary zoning approvals, negotiated a long-term lease for the property in late March 2016.

As part of this process, Mill Run Partners filed an application with the City, seeking to modify the permitted uses for the Mill Run PUD to add "indoor shooting range" as a permitted use. On April 14, 2016, the City's Planning and Zoning Commission ("P&Z") met to consider and vote on the proposed modification of the Mill Run PUD. The vote failed, with the commission indicating that the requested modification fell under Hilliard Code Chapter 1117.

Hilliard City Planner John Talentino ("Talentino") informed Mill Run Partners' representative that "it [would] take a super majority [five members of the city council] to approve [the modification]." (R. 1 at PageID 3, par. 17). Mill Run Partners thereafter filed an application for the modification to be considered by the full Hilliard City Council ("Resolution 16-R-41" or "the resolution"). On May 23, 2016, the city council considered the resolution and held a public hearing during which live testimony was presented both for and against the modification.

The city council voted 4—3 in favor of passing the resolution. However, after the vote, then-city law director Tracy Bradford ("Bradford") informed the city council that it could not

overturn a "negative resolution" of the P&Z unless the council could garner a "supermajority" vote. Nobody objected to Bradford's directive, and the resolution failed.

More than two years later, while considering an entirely separate zoning application, city officials recognized that the Hilliard City Code had inconsistent requirements for approval of PUD rezoning applications compared to other types of rezoning cases. To that end, on January 11, 2019, Hilliard Clerk of Council Lynne Fasone wrote to the councilmembers, stating:

> [T]here is inconsistency in our code between rezoning property to a PUD (Chapter 1117) and rezoning property from one classification or district to another (i.e., straight rezoning), in Chapter 1139. Chapter 1117 does not require a super majority vote of Council to vote differently than what was recommended by P&Z. But for straight rezonings in Chapter 1139, a super majority is required for Council to vote differently than what was recommended by P&Z.

(R. 1 at PageID 4-5, par. 29).

According to Mill Run Partners, "[o]n February 25, 2019, the City amended Chapters 1117 and 113[9] of the codified ordinances to resolve the issue that led to the improper application of a supermajority requirement." (R. 1 at PageID, par. 31).

On August 22, 2019, Mill Run Partners filed suit against the City under 42 U.S.C. § 1983, alleging two counts of deprivation of property (Count I) and liberty (Count II) interests without due process of law under the Fifth and Fourteenth Amendments. Mill Run Partners specifically argued that the proposed modification of the Mill Run PUD—which should have been permitted by way of the city council's initial 4-3 vote—implicated both property and liberty interests that were violated as a result of the City's application of the wrong voting requirement.

On October 29, 2019, the City moved to dismiss the Complaint on the grounds that (1) it was filed beyond the two-year statute of limitations for § 1983 claims, (2) Mill Run Partners had

failed to state an actionable *Monell* claim,[1] and (3) that the misinterpretation of a statute did not amount to a due process violation.

On June 11, 2020, the district court granted the motion to dismiss, holding that (1) Mill Run Partners' claims were time-barred, (2) Mill Run Partners had waived any argument in favor of equitable tolling, and (3) even if Mill Run Partners had not waived such arguments, equitable tolling was inappropriate.[2]

On appeal, Mill Run Partners argues that it did not waive its argument in favor of equitable tolling because "Ohio and federal tolling rules are inconsistent due to [its] status as a business entity." (Appellant's Br. at 9). Mill Run Partners also argues that equitable tolling is appropriate because it diligently pursued its claims despite "repeated affirmative misrepresentations made by City officials, including the City Law Director." *Id.*

## II.

We review *de novo* the district court's dismissal of a complaint on statute of limitations grounds. *Banks v. City of Whitehall,* 344 F.3d 550, 553 (6th Cir. 2003). Section 1983 does not provide a statute of limitations, so we must borrow one from the most analogous state cause of action. *McCormick v. Miami Univ.,* 693 F.3d 654, 663 (6th Cir. 2012). Thus, for § 1983 actions brought in Ohio, we have applied the state's two-year statute of limitations for personal injury actions. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855—56 (6th Cir. 2003) (citing Ohio Rev. Code § 2305.10); *see also Banks*, 344 F.3d at 553. But federal law still determines when a § 1983 claim accrues, and that occurs "when the plaintiff knows or has reason to know of the

---

[1] Although "[m]unicipalities are not vicariously liable for the actions of their employees" under 42 U.S.C. § 1983, *Bible Believers v. Wayne Cnty,* 805 F.3d 228, 260 (6th Cir. 2015) (en banc), a plaintiff can establish municipal liability under § 1983 by showing he was injured pursuant to a municipality's custom or policy. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

[2] The district court declined to address the City's other arguments that (1) Mill Run Partners had failed to state an actionable *Monell* claim and (2) the misinterpretation of a statute did not amount to a due process violation.

injury which is the basis of his action." *Endres v. Ne. Ohio Med. Univ.*, 938 F.3d 281, 292 (6th Cir. 2019) (internal quotation marks and citation omitted)

III.

The parties do not dispute that Mill Run Partners filed the Complaint after the expiration of the two-year statute of limitations. Rather, their disagreement centers on whether the federal doctrine of equitable tolling saves Mill Run Partners' claims. That is, Mill Run Partners argues that its claims were undiscoverable until the City acknowledged the inconsistency in voting requirements for modifications to different types of zoning.

Federal equitable tolling is only available in certain limited circumstances. In *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988), this Court specifically identified five factors to consider when determining the appropriateness of equitably tolling a statute of limitations: (1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement. *Id.* at 151. A litigant carries the burden of establishing entitlement to equitable tolling. *Zappone v. United States*, 870 F.3d 551, 556 (6th Cir. 2017). The absence of prejudice "is not an independent basis for invoking the doctrine [of equitable tolling] and sanctioning deviations from established procedures." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984). To the contrary, "[p]rejudice may only be considered if other factors of the test are met and therefore can only weigh in [the defendant's] favor." *Townsend v. Soc. Sec. Admin.*, 486 F.3d 127, 132 (6th Cir. 2007) (citation and internal quotation marks omitted).

We have explained that equitable tolling is to be applied "sparingly, and not when there has only been a garden variety claim of excusable neglect." *Zappone*, 870 F.3d at 556 (quoting

*Jackson v. United States*, 751 F.3d 712, 718 (6th Cir. 2014)). "The most common situation calling for equitable tolling involves some affirmative representation or action by the employer that causes an employee to miss a filing deadline." *Andrews*, 851 F.2d at 151. But "[a]bsent compelling equitable considerations, a court should not extend limitations by even a single day." *Graham-Humphrey v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000) (citation omitted)

Here, the injury complained of—the erroneous denial of the proposed PUD modification—arose on May 23, 2016 when the City applied the incorrect voting standard. Mill Run Partners does not deny that it knew that its PUD modification application was denied at that time, yet it argues that it lacked both actual and constructive notice of its claim because "the issue did not come to light until early 2019." (Appellant's Br. at 13—14). To this extent, Mill Run Partners contends that it could not have had notice of the filing deadline for its lawsuit "until (1) it learned the wrong standard was applied and (2) it retained counsel relating to the same," neither of which, in Mill Run Partners' view, happened until January 2019. *Id.* at 14—15. While Mill Run Partners may have justifiably relied on the city council's misunderstanding of the voting requirements, it did so at its own risk. "It is well-settled that ignorance of the law alone, is not sufficient to warrant equitable tolling." *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991). A plaintiff's "lack of legal training, his poor education, or even his illiteracy does not give a court reason to toll the statute of limitations." *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002).[3] Nor are such factors applicable to a plaintiff that, by its own account, engaged in extended negotiations with a business partner

---

[3] To the extent it makes such an argument, we reject Mill Run Partners' contention that its hiring of an attorney in early 2019 was an event sufficient in itself to justify equitable tolling. We have consistently refused to apply equitable tolling as to plaintiffs who filed time-barred claims because they only consulted attorneys after the limitations period expired. *See, e.g.*, *Rose,* 945 F.2d at 1336 ("Basically, Rose's arguments boil down to the fact that he did not know about his statutory rights until he saw an attorney after the expiration of the limitations period. Absent a showing that he was somehow deterred from seeking legal advice by his employer, this is simply not enough to warrant equitable tolling.").

and worked with public officials to obtain required approvals. The Court therefore rejects Mill Run Partners' argument that it lacked notice as to its injury.

Mill Run Partners nevertheless contends that its delay in filing suit was reasonable given that the City's misinterpretation of its own law contributed to Mill Run Partners' missing the two-year deadline. However, an opposing party's misinterpretation of law is not the same as a deliberately misleading tactic. We have held in the employment law context, for example, that affirmative representations by the employer that misled a Title VII complainant into missing a filing deadline were sufficient to toll the applicable Title VII period. *See, e.g., Seay v. Tenn. Valley Auth.,* 339 F.3d 454, 468–70 (6th Cir. 2003); *Leake v. Univ. of Cincinnati,* 605 F.2d 255, 259 (6th Cir. 1979); *see also Irwin v. Dep't of Veterans Affs.,* 498 U.S. 89, 96 (1990) (explaining that equitable tolling is appropriate in situations where the claimant "has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass").

In *Leake* we tolled the filing deadline that the plaintiff missed as part of her lawsuit against a university, the plaintiff's employer. 605 F.2d at 259. There, we found that the university had specifically requested that the plaintiff refrain from seeking EEOC counseling until it could investigate her allegations. *Id.* We found tolling appropriate because the university made express statements "that it would not use the time it spent in its investigation to prejudice plaintiff with respect to any statute of limitations[,]" and the plaintiff's reliance on that statement led her to delay filing charges with the EEOC. *Id.* In *Seay*, 339 F.3d at 468–70, we found equitable tolling to be appropriate for the plaintiff's untimely Title VII claims that were based on his non-selection for a job. Even though the employer had informed the plaintiff that nobody had received the job, the employer omitted information that another employee had been "rotated into the position for 'developmental' purposes." *Id.* at 468. We concluded that "[t]his was [] critical information [the

p]laintiff needed to raise his suspicions about the employer's possible racially discriminatory motive in rejecting him." *Id.* at 469.

In the instant case, Mill Run Partners claims that it did not know of the alleged injury until early 2019 when the City acknowledged the voting inconsistency. However, the City's admitted error does not equate to an active effort to mislead Mill Run Partners, contrary to Mill Run Partners' characterization of the City's actions as such. In contrast to the employer in *Seay*, the City never affirmatively withheld information that only it possessed, and in contrast to the employer in *Leake*, the City never made any representations that would have led Mill Run Partners to believe that it could delay pursuing further legal recourse. Mill Run Partners has also not made any allegations that the City blatantly disregarded its own policy in order to obstruct Mill Run Partners from understanding any of its legal rights.

Mill Run Partners has not alleged that it lacked access to the Hilliard City Code when the injury occurred on May 23, 2016 or anytime thereafter. In fact, Mill Run Partners alleges that the official record of the April 14, 2016 proceedings before P&Z correctly identified the chapter of the Code applicable to the requested modification. Thus, either by itself or with the aid of counsel, Mill Run Partners could have reviewed the Code as soon as the injury occurred on May 23, 2016. The Court thus concludes that Mill Run Partners has made no showing that "despite all due diligence [it was] unable to obtain vital information bearing on the existence of [its] claim." *Seay*, 339 F.3d at 469 (citation omitted). That Mill Run Partners *did not* know of the city council's error does not itself establish that it *could not* have obtained that information. Mill Run Partners made no allegations that it made any effort to question the City or inquire about subsequent legal action that it could take in response to the city council's action, and even if Mill Run Partners had made those allegations, the City was under no obligation to counsel Mill Run Partners.

This is not to say that the Court condones the City's activity—rather, the Court notes that the City simply did not act in a way that would have misled a reasonable plaintiff into believing that it was completely foreclosed from taking any further recourse. We cannot find that the City or any of its employees tricked Mill Run Partners or did anything untoward in an effort to prevent Mill Run Partners from filing a lawsuit against the City. Mill Run Partners was always free to do its own research or consult an attorney to do the same. Mill Run Partners claims that it "took the City at its word" and that "[its] understanding about what vote threshold was required to overturn the [P&Z] came from the City itself." (Reply Br. at 6). Yet, Mill Run Partners also concedes that after the vote, its representatives "moved on *based on what the City officials told them.*" *Id.* (emphasis added). It is, unfortunately, a problem of Mill Run Partners' own making that it chose to rely on the City's legal "advice" in assuming that it could not take any further legal action.

However Mill Run Partners wishes to characterize the City's actions—Mill Run Partners' arguments all circle around one basic contention: that its mistaken reliance on the City's erroneous legal conclusion justifies equitable tolling. But, as we have said before, "[t]ypically, equitable tolling applies only when a litigant's failure to meet a legally mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Graham-Humphreys,* 209 F.3d at 560-61. Such was not the case here. None of the first, second, third, or fifth *Andrews* factors weigh in favor of equitable tolling, and in the absence of any other countervailing considerations, the Court need not consider the fourth factor. *See Townsend*, 486 F.3d at 132. The Court therefore determines that equitable tolling is not warranted in this case.[4]

---

[4] Because we determine that federal equitable tolling does not apply, we need not address whether Mill Run Partners waived argument under that doctrine before the district court.

IV.

Having determined that Mill Run Partners is not entitled to equitable tolling, we find that the district court did not err in granting the City's motion to dismiss. Therefore, we AFFIRM the decision of the district court.