Lawrence LEWIS, Plaintiff,

v.

NVT TECHNOLOGIES, INC., Defendant.

No. CA–99–689 (RCL).

United States District Court, District of Columbia.

Oct. 20, 2000.

Steven J. Kramer, Washington, DC, for plaintiff.

Thomas M. Mackall, Hunton & Williams, Washington, DC, for defendant.

*MEMORANDUM OPINION AND ORDER*

LAMBERTH, District Judge.

Plaintiff Lawrence Lewis was dismissed by his employer, NVT Technologies, Inc. (NVT), on September 30, 1998. He sued, alleging that NVT discriminated against him on the basis of his race in violation of Title VII, 42 U.S.C.2000(e) *et seq.*,[1] and

1. Plaintiff also included a claim under the

D.C. Human Rights Act (DCHRA), D.C.Code

that NVT violated the terms of his employment contract as embodied in NVT's employee manual.[2] NVT has moved for summary judgment on all counts. For the reasons discussed below, the Court grants NVT's motion.

## I Background

Lawrence Lewis began working at NVT in 1991 on a contract with the federal government to provide services to the Hubert H. Humphrey building. He was employed as the lead engineer on the project. He also, for much of the time of his employment, worked for a competitor of NVT, Griffin Services. This was consistent with the conflict of interest policy at NVT, and Mr. Lewis' supervisors were kept aware of his outside employment.

On September 1, 1998, NVT sent a memorandum to all of its employees at the H.H. Humphrey building asking them to disclose any other employment so that it could be evaluated for potential conflicts of interest. Mr. Lewis reported that he continued to work for a competitor, Griffin Services. NVT at that point decided to change its policy with respect to conflicts of interest. Mr. Lewis was told that he would need to demonstrate to NVT that he had terminated his employment relationship with Griffin Services by September 30, 1998 or he would be terminated. On September 30, when he had not demonstrated that he had ended his relationship with Griffin, he was fired.

§ 1–2501 et. seq. The Court treats the DCHRA claims as identical to the plaintiff's claims under Title VII. See Howard University v. Green, 652 A.2d 41, 45 (D.C.1994).

**2.** This Court has jurisdiction over plaintiff's state law breach of contract claims pursuant to 28 U.S.C. § 1367.

**3.** Although the D.C. Circuit has yet to consider the issue, nine of the ten circuits to reach the issue have held that the plaintiff in a Title VII case can make her prima facie case despite evidence that she was replaced by a worker who does share her protected attrib-

## II Race Discrimination Claim

Under the framework established in McDonnell Douglas v. Green a plaintiff in a Title VII case must first establish a prima facie case of discrimination. 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Normally, in a case involving a job termination, this requires demonstrating that (1) the plaintiff was a member of a protected class, (2) the plaintiff was qualified for the job in question, (3) the plaintiff was fired and (4) either the person hired was not a member of a protected class or the position was unfilled for a significant amount of time. See id.

■ The plaintiff cannot meet element (4) in this case because the person who replaced him is black. See Defendant's Reply Memorandum in Support of Motion for Summary Judgment (Defendant's Reply) Ex. 1 at 1; Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Plaintiff's Opposition) at 14. However, as plaintiff argues, the framework for establishing a prima facie case from McDonnell Douglas is not meant to be inflexible. See McDonnell Douglas, 411 U.S. at 802 n. 13, 93 S.Ct. 1817 ("The facts will necessarily vary in Title VII cases, and the specification above of the prima facie proof required from the respondent is not necessarily applicable in every respect to differing factual situations."). See also, Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 n. 6, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (the McDonnell Douglas four element test for a plaintiff's prima facie case "is not inflexible.").[3]

ute. See Carson v. Bethlehem Steel Corp., 82 F.3d 157, 159 (7th Cir.1996) ("That one's replacement is of another race, sex, or age may help raise an inference of discrimination, but it is neither a sufficient nor a necessary condition."); Meiri v. Dacon, 759 F.2d 989, 996 (2nd Cir.1985) (requiring the plaintiff to demonstrate that she was replaced by someone outside of her protected class "is inappropriate and at odds with the policies underlying Title VII."); Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 354 (3rd Cir. 1999) ("The fact that a female plaintiff claiming gender discrimination was replaced by another woman ... does not, as a matter of

While the *McDonnell Douglas* elements are one useful way of establishing a prima facie case for a Title VII plaintiff, the underlying determination is whether the employee can demonstrate that there is a coherent reason to think that he was fired "under circumstances that give rise to an inference of unlawful discrimination" *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089. The Court adopts this more flexible approach in determining whether the plaintiff has made his prima facie case.

 The plaintiff argues that because his supervisor, Mr. Cleveland, made a number of racially offensive remarks, and discussed the racial characteristics of applicants when making employment decisions, he has made his prima facie case. *See* Plaintiff's Opposition at 8–10; Ex. 1. However, NVT has demonstrated that the president of the company, V. Thanh Nguyen, was the person at the company who decided to investigate conflicts of interest more aggressively, not Mr. Cleveland. *See* Defendant's Memorandum of Points and Authorities in Support of Motion for Summary Judgment (Defendant's Memorandum), Ex. 4, Ans. No. 17; Defendant's Reply, Ex. 1 at 2. According to Mr. Lewis, on the night he was terminated, he recalls being told that Mr. Cleveland "didn't have anything to do with it" and that the decision to terminate him was made by of the "owner of the organization." Defendant's

Memorandum, Ex. 3 at 17. Mr. Nguyen has stated that he was the person who made the decision to terminate Mr. Lewis because he was in violation of NVT's conflict of interest policy. *See* Defendant's Reply, Ex. 1 at 2. The plaintiff has produced no evidence that Mr. Nguyen made any racially offensive remarks.

The plaintiff has not raised a question of material fact as to whether the decision to terminate Mr. Lewis was made by Mr. Nguyen. Nor has the plaintiff made any showing that Mr. Cleveland had any role in implementing the conflict of interest policy adopted by NVT in September of 1998. Further, defendant has produced evidence, which plaintiff has not challenged, that three non–African–Americans were terminated at approximately the same time as the plaintiff for violations of NVT's conflict of interest policy and that both African–Americans and non–African–Americans who did not have employment outside of NVT continued working at the company after it implemented its conflict of interest policy in September of 1998. *See* Defendant's Memorandum, Ex. 5; Ex. 2 at 42–44; Ex. 6 at 2; Ex. 4 answer 16; Ex. 3, at 146–48 and Ex. 4 thereto.

Under the flexible test for whether the plaintiff has met his prima facie case which this Court adopts, Mr. Lewis must show that he suffered the adverse employment

law or logic, foreclose the plaintiff from proving that the employer was motivated by gender."); *Nieto v. L & H Packing Co.,* 108 F.3d 621, 624 n. 7 (5th Cir.1997) ("While the fact that one's replacement is of another national origin 'may help to raise an inference of discrimination, [. . .] it is neither a sufficient nor a necessary condition.' ") (quoting *Carson* ); *Jackson v. Richards Med. Co.,* 961 F.2d 575, 587 n. 12 (6th Cir.1992) ("[T]he fact that an employer replaces a Title VII plaintiff with a person from within the same protected class as the plaintiff is not, by itself, sufficient grounds for dismissing a Title VII claim."); *Walker v. St. Anthony's Med. Ctr.,* 881 F.2d 554, 558 (8th Cir.1989) ("[I]t is entirely conceivable that a woman discharged and eventually replaced by another woman may be able to establish that she was the object of impermissible discrimination related to her

gender."); *Perry v. Woodward,* 199 F.3d 1126, 1138 (10th Cir.1999) ("A non-white employee who claims to have been discharged as a result of racial discrimination can establish the fourth element of her prima facie case without proving that her job was filled by a person who does not possess her protected attribute); *Howard v. Roadway Express, Inc.,* 726 F.2d 1529, 1534 (11th Cir.1984) ("[P]roof that the employer replaced the fired minority employee with a non-minority employee is not the only way to create" an inference of improper discrimination). *But see, Brown v. McLean,* 159 F.3d 898, 905 (4th Cir.1998) ("In order to make out a prima facie case of discriminatory termination, a plaintiff must ordinarily show that the position ultimately was filled by someone not a member of the protected class.").

action because of his race. Because Mr. Lewis has not linked his supervisor's comments with his adverse employment action and there is undisputed evidence that the conflict of interest policy was applied without regard to race, he has not met this burden.

Summary judgment in favor of NVT on this claim is therefore appropriate.

### III. Breach of Contract Claim

■ The plaintiff contends that NVT impermissibly changed its policy with respect to outside employment. *See* Complaint at 5. NVT had distributed an employee handbook, which stated that its policy with respect to conflicts of interest was one of 'full disclosure' of outside work with competitors. *See* Plaintiff's Opposition, Ex. 9 § 5.3. When NVT told Mr. Lewis to end his employment with Griffin or he would be fired, he alleges they violated a term of his employment contract with them, as embodied in the employee policy manual. *See* Complaint at 5.

The defendant notes that Mr. Lewis was an at-will employee. *See* Defendant's Memorandum Ex. 3 Ex. 11 thereto. NVT argues that because Mr. Lewis was an at-will employee, NVT was free to change any policy in the employee manual at its discretion and terminate him if he violated the newly adopted policy. *See* Defendant's Memorandum at 18.

■ The law in the District of Columbia is clear—there is a strong presumption that at-will employees do not gain contractual rights based on the statements in an employee policy manual. *See, Perkins v. District Government Employees Federal Credit Union*, 653 A.2d 842, 843 (D.C.1995) (ambiguous language is "insufficient to overcome the well-established presumption of an at-will agreement"). *See also Fleming v. AT & T*, 878 F.2d 1472, 1474–75 (D.C.Cir.1989) (holding that company literature stating a preference for "a term of life time employment" cannot form the basis for a breach of contract claim for an at-will employee).

While NVT has produced a form signed by the plaintiff indicating that he acknowledges that he is an at-will employee, see Defendant's Memorandum, Ex. 3, Deposition of Lawrence Lewis, Ex. 11 thereto, the plaintiff has not pointed to any evidence that suggests that he was not an at-will employee. The statement in the employee manual that "[w]e ask that you discuss all possible conflicts with your supervisor," see Plaintiff's Opposition ex. 9, does not unambiguously confer a contractual obligation on NVT to limit its conflict of interest policy. While the plaintiff has directed the Court to a number of cases where employee policy manuals have been found to change the contractual terms of an employment relation, none of these cases involves an at-will employment arrangement. *See* Plaintiff's Opposition at 17–18. Because Mr. Lewis was an at-will employee, NVT was free to change its policy with regard to outside employment and terminate him for violating that policy.

The Court grants summary judgment in favor of the defendant on this count.

### IV. Conclusion

For the forgoing reasons, the Court grants summary judgment for defendant on all counts.

SO ORDERED.